Judge Nicholas
delivered the Opinion of the Court.
McDade mortgaged to Martin two lots of ground, to indemnify him as his surety in a note to the Bank of the Commonwealth of Kentucky, and also in a note for a smaller amount to a third person.
Judgment having been obtained on the latter, against McDade and Martin, an execution which issued thereon, was levied on the two lots, and the interest of both Me-Dade and Martin therein sold by the sheriff to Cooper, at a price much beyond the amount due on the execution.
By an arrangement between McDade, Cooper and Gentry, previous to the sale, it was agreed that Cooper should become the purchaser of the two lots, at the sheriff’s sale, that Cooper and Gentry should release McDade from debts which he severally owed them, and which with the amount due on the execution, was to be in fulD *24 payment of the lots. This arrangement was made on the part of Cooper and Gentry, for the purpose of securing the debts due them by McDade, he being insolvent. Immediately after the sale, Cooper was put in possession of the lots, and still retains it.
Bill for foreclosure; decree and Sale. '
Bill, by tire purchaser-under the execution, in possession.
Sale, by sheriff, 'of two lots— for more than the amount óf the execution, is illegal.
Interest oCmorl gagee is not vendible under execution. .
Mortgagor having agreed that the premises should bé sold under execution, the purchaser acquired his equitable right.
*24 After the sheriff’s sale, Martin'filed his bill against Mc-Dade and Gentry, averring that Gentry had become the purchaser of the equity of redemption, and after due service of process upon both, obtained a decree of foreclosure and order of sale, became the purchaser of the lots, for a small sum, at the commissioner’s sale, had his purchase confirmed, and an habere, facias awarded him.
Cooper then filed his hill with injunction against the habere facias, denying any notice of the pendency of Martin’s suit; praying to be quieted in his possession; that Martin might be made to release his title to him, and for such other relief as he might be entitled to.
Martin, by his answer in the nature of a cross-bill, resisted Cooper’s equity;set up and relied upon the decree of foreclosure and sale under his mortgage, in har thereof ; but in case the court should deem Cooper entitled to relief, then praying a reforecloslire and sale, and claiming in that event, a priority, not only in his own favor for one-third of the bank debt paid by him, but also in favor of Churchill and Beeler, his co-sureties therein, for the other two-thirds paid by them, and to that end brought them before the Court.
They answered, claiming the lien and priority asserted for them by Martin.
- On final hearing the court treated the whole purchase of Cooper as null and void, dissolved his injunction, and dismissed his bill.
As the lots were sold together," and not separately, with-, out the privity or assent of Martin; as the sheriff exceeded his authority, in selling for more than the amount due on the execution, and as the interest of Martin was not vendible at all under execution, the court certainly did right in treating the sale of his interest as a mere nullity. But the mode of sale having been the result of an express agreement on the part of McDade, for the purpose of selling and transferring in that way his equi *25 ty of redemption, it is equally clear, the sale should be. deemed sufficient to give Cooper at least the equitable right thereto. The only reason, therefore, for the absolute dismissal of his bill, without affording him any relief, must be that, the decree of foreclosure and sale have barred Cooper’s right, Martin net having, as is contended, any notice thereof at the institution of his suit, or at the time of obtaining his decree.
Junior incum-brancers.known to the senior mortgagee, should be parties to his bill for a foreclosure.
The holder of the junior mortgage, or incum-brance, or of the equity of redemption, is' not hound by a decree of foreclosure to which he was no party — and will be allowed to redeem the estate —although the senior mortgagee had no notice of such claim.
From facts and circumstances not necessary to be detailed, we should have little hesitation in denying to Martin, the attitude claimed for him, of not having had notice of Cooper’s purchase, if he had been charged with it, or the fact had been put in issue. But as this has not been done, wc shall waive the consideration of the question, whether he is entitled to be so treated, inasmuch as the result, in our opinion, will be the same whether he had notice or not.
All the authorites agree that where a mortgagee, 'at the time of filing his bill, has notice of a junior mortgage, or other subsequent incumbrance, he is bound to make the holder thereof a party to the suit, or the proceedings therein will not affect him. But where he has no such notice, it has been deemed by some, an undue degree of hardship, to compel him to grope the world over in pursuit of secret incumbrances, under the penalty of render* ing his foreclosure liable to be opened at a distant day, to let in the right of redemption of one whose claim could not have been ascertained by reasonable search or enquiry. Coventry’s Pow. 306, n. G — 551, n. S — 989, n. C — The law, however, has been authoritatively settled, that he must incur this hardship. In the case of Haines vs. Beach, 3 John. Chy. 459, all the English cases, ancient and modern, are collated, and Chancellor Kent comes to the just conclusion, that in England the rule has been well settled, that the subsequent purchasers or incumbrancers must be parties, or the decree will not bind their rights. He conceives the necessity, for making the subsequent incumbrancers parties, or holding their rights unimpaired, to be much stronger and more indispensable to justice under the Ncw-York practice, similar to that of this state, because the mortgagor would *26 take the surplus money, after the sale of the mortgage property, and thus be enabled and tempted to commit a fraud, by not disclosing the subsequent incumbrances. “But,” says he, “their rights cannot be destroyed in this way; the purchaser will take only a title as against the-fardes to the suit, a'nd he cannot set it up against the subsisting eqxxity of those who are not parties.” We concur with him, that “ this is the necessary doctrine resulting from the cases.” But we cannot see, as he does, the additional force, the doctrine derives from the difference of practice in this country and England, between an order'of sale, and simple foreclosure. The purchaser, under an Order of sale, when the property is sold in gross, is liable to be injured to the extent of the surplus money that will go into the hands of the mortgagor, for which the purchaser will have no lien, and his claim upon the regard and protection of the court, against such contingent loss, if it does not tend to throw the preponderance of the argument the other way, must serve at least to keep - the scales in equilibrio, and leave the question here as it stood in England. After the mortgagor had parted with the whole equity of redemption, or put a further incum-brance upon it, it might well have been insisted, that a decree against him alone, either foreclosed nothing, or only such residue of the equity of redemption as was left in him, and the rather because a simple foreclosure originated no new contract, or new consideration, between mortgagor and mortgagee. But the purchaser', under an order of sale, might plausibly insist to stand upon different ground, and claim the attitude of a purchaser of the legal estate, for valuable consideration, without notice of the outstanding equity. If the question were now an open one, it would perhaps be difficult-to find a satisfactory answer to such pretension, unless it be, that the judicial proceeding against the mortagor was in the general taken to be in invito, and not by consent, and that public policy forbid his being permitted to use < a court of justice as an instrument in defrauding his alienees by an express consent.
The hardships and inconveniences are many both ways; and in England the subject has been treated pretty much *27 as an election between inconveniences. In one of the earliest cases, the chancellor admitted that it would be “ extremely mischievous” to the mortgagee, to be obliged to make all persons parties who were interested ; but said, he would be finally consoled in having his principal, interest and costs. But if the plairtiff should not be relieved in that case, “ it would be an irreparable loss, and he thought trouble and pains less prejudicial than ruin and total loss.”
Upon a bill by the purchaser of a mortgaged estate, to be relieved from the decree claim of the mortgagee, and for such relief as he may be entitled to, he may be permitted to re deem, under a general prayer.
Junior mortgagee, made party to the bill of the elder, for a foreclosure, and failing to defend, will be barred.
Indeed, after a careful review of the arguments for and against, it will be found much less difficult to yield assent to the rule, if it hacl been settled either way, because it had been so settled, than from any thorough conviction of its absolute justice' and policy. See 3 Mad. Chancery, 188.
We think Cooper should have been permitted to redeem, upon paying Martin the amount paid by him on the i,.ank debt, with interest and the costs of the former suit. It is true, there is no specific prayer for such relief, but under the circumstances of the whole case, we think it should have been afforded under the general prayer.
If Gentry had been the purchaser, or sole proprietor, of the equity of redemption, he couid not be relieved from the eiiect of his laches in failing to defend Martin’s bill. Or, ii instead of a purchase of the whole equity of redemption by Cooper, in which Gentry holds an interest to the amount of his debt, there had been a new mortgage made to them to secure the amount of their respective debts, it might have been proper, in that state of case, to give Martin the election to hold the property, by paying Cooper alone, to the exclusion of Gentry. But as his iaches cannot affect the rights of Cooper, and as Cooper can only have full justice by permitting him to redeem, it is no valid objection' to his being allowed so to do, that Gentry may thereby derive anevent-tual benefit, from which he otherwise would have been debarred — the benefit to Gentry being no matter of prejudice to Martin.
There is no just pretext for subjecting the property to the execution debt paid by Cooper, pari passu with that of Martin. The sale under the execution was an extin- *28 guishment of that debt by McDade himself, and constituted part of the consideration in- the purchase of hin-equity of redemption-.
A mortgage to one of several the otliersnoth-
Nor is there any better reason for the lien asserted in behalf of Beeler and Churchill, for the amount of the bank debt paid by them-. The mortgage was exclusively for the benefit and indemnity of Martin, and in. no way t° secure them-. A, return of me-money paid by him, with interest, is full indemnity to him, and an entire satisfaction of the terms of the mortgage.
The decree must be reversed, with costs, and the cause remanded with directions to ascertain the amount paid-by Martin on the bank debt, and its value in specie at the time of payment; upon repayment of which, with interest, together with the costs of his suit against Me-Dade, by a named day, Cooper should be permitted to redeem the property, and have his title and possession quieted otherwise his bill to-be dismissed.