WATSON & POLHEMUS *vs.* SPENCE.

A *decree of foreclosure* of the equity of redemption, and a *sale* in pursuance thereof on a bill filed *against the mortgagor alone*, do not affect the rights of *purchasers* deriving title to the premises from and under the mortgagor, and who were *not made parties* to the bill in equity.

After forfeiture, a *mortgagee* in possession may continue to hold until payment of the mortgage moneys, and so may his *assignees*; but not so a *purchaser*, under a decree against the *mortgagor* on a bill filed against him *alone*, after all interest in the premises *has passed from him* by conveyance or by operation of law. The decree in such case is *void* for want of jurisdiction in the court of chancery, as it respects the purchasers under the mortgagor, and consequently all subsequent proceedings are void.

To give effect to a decree in chancery, notice of the suit must be brought home to the party to be affected by it; if his *name* appear in the record, notice will be presumed, but not otherwise.

A *purchaser*, under a void decree in possession of land, is viewed as a stranger, and cannot protect himself against the owner of the equity of redemption, by setting up an outstanding title in the mortgagee, at whose suit the decree was obtained.

THIS was an action of *ejectment*, tried at the Tompkins circuit in October, 1831, before the Hon. ROBERT MONELL, one of the circuit judges.

The plaintiffs made title to the premises in question : 1. By a conveyance from *John Richardson* to *Polhemus*, one of the plaintiffs, bearing date 16th April, 1796 ; and 2. By a sheriff's deed to *Watson*, the other plaintiff, bearing date 14th April, 1801, in pursuance of a sale under an execution upon a judgment rendered in 1797, in favor of Watson against Richardson. On the part of the defendant, it was shown that Richardson purchased the premises in question of *Thomas Bridgen*, and on the 12th February, 1795, executed to Bridgen his bond and *mortgage*

of the premises, to secure the payment of the consideration money ; that on 11th February, 1803, the bond and mortgage were assigned to *Peter Jay Munro*, who, in 1807, filed a bill in chancery *against Richardson alone* for the foreclosure of the equity of redemption, in which he stated, among other things, that a similar bill had been filed by Bridgen in the year 1799, and that the suit thus commenced progressed to a master's report after the bill had been taken *pro confesso*. Richardson put in an answer to the bill filed by Munro, and a decree for foreclosure and sale was obtained by Munro, in pursuance of which the premises were sold to *Thomas Morris*, and conveyed to him by a master's deed bearing date 29th August, 1810, *subject to all adverse claims to the same*, he taking upon himself *all chances and risks of title*. The plaintiffs objected to the evidence of foreclosure of the mortgage as inadmissible, *on the ground that they had not been made parties* to the proceeding ; but the objection was overruled. The defendant deduced a regular title from Morris to him. The jury, under the charge of the judge, found a verdict for the defendant, which the plaintiffs now moved to set aside. There were other questions besides the above agitated on the trial, but as they are not passed upon in detail, by the court, are not here noticed.

*A. Gibbs*, for the plaintiffs.

*S. Stevens*, for the defendant.

*By the Court*, COWEN, J. *Richardson*, previous to the filing of Munro's bill, had parted with all his interest in lot No. 14, of which the premises in question were a part. He had first in 1796, sold it to *Polhemus*, one of the plaintiffs, and in 1801, *Watson*, the other plaintiff, purchased it under a *fi. fa.* on his judgment of January term, 1797. After all this, Munro, the assignee of Bridgen's mortgage, files his bill against *Richardson alone*, and obtains a decree of sale. It is perhaps the same thing whether we take as the basis of the foreclosure the bill filed by

Munro in 1807, or Bridgen's bill recited in it, which was filed in 1799. But the proceedings upon the recited bill not being proved in any way, for the answer of Richardson admitting them being after his title was gone to the plaintiffs, would not be evidence against them, the defendant must in strictness be driven to rely on Munro's bill alone. This clearly enables the plaintiffs to raise their main objection, which is, that *Richardson* having parted with his interest in the premises, and he being the sole party, and the decree and master's deed to Morris saving expressly the rights of all others not made parties, the plaintiffs are not to be affected. They are certainly not affected, farther than the decree against Richardson alone and the master's sale under it operate in their own nature, to displace their rights. It is a general rule, that a decree in equity shall not, any more than a verdict or judgment at law, either conclude or in any way prejudice the rights of those who are not parties to the suit ; and it is perfectly clear that the decree, in this instance, would not cut off the power of the plaintiffs to redeem. It could not have that effect, even though they were no more than ordinary incumbrancers. *Haines* v. *Beach,* 6 *Johns. Ch. R.* 459. *Lyon* v. *Sanford,* 5 *Conn. R.* 554. *A fortiori* as to subsequent purchasers of the mortgagor's whole interest, before the bill filed against him. *Cooper* v. *Martin,* 1 *Dana,* 25, 26. *Rogers* v. *Jones,* 1 *McCord's Ch. R.* 221, 227. This is the first time, I believe, however, that either subsequent encumbrancers or purchasers have denied all effect whatever to such a decree against them, even the passing the mortgagor's right, subject to the power of his assignees to redeem. The reason for that may be, that a foreclosure so very defective has not heretofore been set up against them.

If the decree had stopped with a strict foreclosure against the mortgagor, what would have been the effect ? What is the nature of the original contract ? It was a conveyance in fee to the mortgagee, defeasible on payment at the day. A default of payment entitled the mortgagee to possession, subject to the mortgagor's right to redeem. If the mortgagee, as such, had

Watson v. Spence.

obtained possession, he could still hold until payment. *Van Dyne* v. *Thayer*, 14 *Wendell*, 233, 236. *Phyfe* v. *Riley*, 15 *id.* 248. He would be under the original mortgage. His title is coeval with that. Then the court calls upon the mortgagor to redeem or be forever foreclosed. He is in default and is actually foreclosed. The right of the mortgagee is not weakened by such a proceeding. Up to the time of foreclosure, the mortgagor notwithstanding he may have assigned the equity of redemption, has a right to pay the money, in respect to the privity of contract between him and the mortgagee. He is most commonly holden to pay, not only by the mortgage, but by bond or note, &c. and for the complete perfection of the title, must be made a party. But after he has sold out, of what avail is the payment? It might discharge his personal debt; but I cannot perceive that any power of redemption remains to him in his own right. He may go to redeem in the name of his assignee, or in his own name for the benefit of the assignee, and so may any other man, if the assignee will consent; but the act of payment must enure to the benefit of the person owning the equity of redemption. What is an equity of redemption? At law, as between the mortgagor and mortgagee, it is not known. By default of payment, at any rate, all legal title of the mortgagor is gone. In the eye of chancery, however, he owns an equity of redemption, which in that court is considered an estate in fee. 1 *Pow. on Mortg. Rand's ed.* 250. *b.,* 251 *a.,* 252, *and the notes.* By the cases cited at these pages, it will be seen that it may descend to the heir at law, and may be devised or sold as real estate. With us even at law, it is bound by a judgment as real estate, and passes by sale under a fi. fa. *Waters* v. *Stewart*, 1 *Caines' Cas. in Er.* 47. In the case at bar, therefore, all right to the land had gone from Richardson when Munro came with his bill. At law, the fee was in Munro, as the assignee of Bridgen the mortgagee; in equity and at law, it had passed from Richardson by his deed to Polhemus, or by the sheriff's sale to Watson; Munro might claim at law as standing in the place of the mortgagee. He might assign his legal right to another. But it is not perceived how a decree of strict fore-

closure, on a bill filed against Richardson, could have added any thing to Munro's right. There was nothing legal or equitable remaining in Richardson, upon which a decree of foreclosure could operate. He himself could no longer file his bill to redeem. *Ingersoll* v. *Sawyer,* 2 *Pick.* 276, 277, 278. Suppose after the mortgagee has assigned, a bill should be filed against him alone and a decree taken by the mortgagor to redeem ; could any one be brought to doubt that the whole proceeding would be *coram non judice,* and void in respect to the assignee ? What is the effect of a decree of strict foreclosure ? It changes what was before but a chattel interest, into a vested and absolute estate, from the time of the final decree. 2 *Pow. on Mortg. Rand's ed.* 423 *a,* to 425 *a, and the notes.* It is possible, however, that such an effect can be wrought by a decree against a mere stranger who holds no interest either in law or equity ?

So far, I have considered the case as one of strict foreclosure in favor of Munro ; and it is impossible that he could, by such a proceeding at all improve, though certainly he would not impair, the right personal to himself. He would in that case have himself sold and deeded to Morris, instead of leaving that to be be done by a master ; and a title thus passing down to the defendant would perhaps have connected him with Bridgen, by deeds enuring as consecutive assignments of his interest as mortgagee. In this way, the defendant might have maintained his possession, as assignee *pro tanto,* although the decree should be disregarded as a nullity. *Phyfe* v. *Riley,* 15 *Wendell,* 248. *Jackson, ex dem. Minkler,* v. *Minkler,* 10 *Johns. R.* 480. But the rights of Munro, as mortgagee never passed from him. He never assigned his interest, nor conveyed it in any form. He obtained a decree which was a nullity, because against a mere stranger. This void decree directs an account and foreclosure, a sale and deed by a master ; the latter equally void, of course, with the decree from which it emanated. It passed nothing ; and, therefore, the defendant took nothing through the mesne conveyances from Morris down to him. In short, the objection is, that the whole proceedings in the court of chancery and in

the master's office, passed without the court acquiring jurisdiction. It is a conceded fact that not a soul having a particle of interest in the equity of redemption was ever served with process ; and *non constat* ever heard of the process. The bill seeks no party beside Richardson, who had no more interest than the master who made the sale. The jurisdiction of the court of chancery is, like that of every other court, open to be questioned in a collateral proceeding. The question usually occurs in respect to courts of neighboring states, where the cases are numerous, that, to give any sort of life to the decree, notice must be brought home to the party whose interests are to be affected. Numerous cases to this effect are cited by Chancellor Walworth in *Bates* v. *Delavan*, 5 *Paige*, 299. They are equally in point, because equally binding, with domestic decrees. Service of process, I admit, must be presumed where the party is named ; but his name not being on the record, there is no room for presumption.

The consequence is, it seems to me, inevitable, that the plaintiffs are entitled to recover ; or rather the plaintiff Polhemus, who took under the deed of 1796, which preceded even the Watson judgment. Against him, none but the mortgagee or his assignee can defend, and neither is here. The defendant is a stranger ; and it is well settled that he has no right to protect himself against the owner of the equity of redemption, by showing an outstanding title in the mortgagee. As against the defendant, Polhemus is the owner of the fee and is entitled to treat the defendant as a wrong-doer. *Collins* v. *Torry*, 7 *Johns. R.* 278, 282, *per Kent, C. J. Astor* v. *Hoyt*, 5 *Wendell*, 603, 613, *et seq. per Savage, C. J.*

I am aware, that in holding this decree to be void, we are giving it a less effect than would be due to a summary foreclosure by advertisement under the statute. But that is owing to the special provisions of the act, which makes a public notice equivalent to the filing of a bill and service of process on the mortgagor, and all claiming under him by actual purchase of the equity of redemption.

White *v.* Converse.

It is not necessary to examine the other grounds taken by the plaintiffs. Nothing being shown to divest their title, the judge erred in directing a verdict for the defendant; and there must, for that reason, be a new trial.

New trial granted.