BANK U. S. &c.
vs
CARROLL, et al. and will not protect the contract in question, at least upon the proof now before us, from the condemnation of the statute.

Judgment reversed and cause remanded, that a new trial may be granted.

*Husbands* for plaintiff: *Herndon* for defendant.

---

CHANCERY. **Bank of U. S. and Kurtz *vs* Daniel Carroll and others.**

*Case 6.*

ERROR TO THE OLDHAM CIRCUIT.

*Parties in Chancery. Senior and Junior Incumbrancers.*

*Sept. 20.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated. In 1811, Daniel and Charles Carroll and Eli Williams, entered into partnership in a paper manufactory and distillery in the District of Columbia, and in the adjoining State of Maryland. In 1815, after incurring many heavy liabilities, principally to the Banks in the District, the partnership was dissolved, and a partial settlement made, and Eli Williams assumed to pay, as his share of the Bank debts, after allowing him credits for his prior advances, $28,000, to the Union Bank of Georgetown, and $4000 to the Bank of the Metropolis, and the Carrolls became his indorsers; and each of the Carrolls assumed to other Banks the amounts due from each, of their share of the firm debts to the Banks, after allowing to each credits for prior advances. An estimate was made of the stock on hand, &c. &c., and Williams was let into the possession of the paper mill at a rent of $1500 per year.

On the 3d December, 1816, Williams being extensively engaged in business, and in doubtful circumstances, executed to Brent and Key, as trustees, a deed of trust for several tracts of land in Kentucky, among which is a tract of 4000 acres, lying on the Ohio river, in Henry county, now Oldham, in trust: 1st. To pay all expenses that may be incurred in the execution of the trust. 2nd. To save harmless and indemnify the said Carrolls, and

each of them, for any advances made, or which may be made by either of them, under the articles of co-partnership, over and beyond the sums which they, or either of them, were bound to advance, with interest from the time of the advances. 3d. To save harmless and indemnify the said Corrolls, and each of them, from all loss or damage which hath arisen, or may arise, from their or either of their liability for any past or future indorsement or contract, to enable the said Eli Williams to raise his proportion, or any part of his proportion of the capital stock. 4th. To pay and secure to the said Carrolls their full proportion of the profits, (if any) arising from said partnership transactions; and to save them, and each of them, harmless in case it should be unprofitable, from all loss or payment on account of said Williams and his interest in the concern. And, lastly, after these objects are satisfied, to re-convey the residue, if any remains, to said Williams." This deed of trust was duly recorded in the proper office in Henry county, where the most valuable and greater part of the land lay.

In May, 1818, Eli Williams conveyed in trust to Daniel Kurtz, by several distinct deeds, the same lands, together with other lands in Kentucky, to secure to the Bank of Columbia upwards of $58,000, giving to said Kurtz the power to sell and apply the proceeds to the payment of said debts. The deed embracing the 4000 acre tract, as well as those embracing the other tracts, were deposited in the vault of the Bank, and there kept, and were never recorded until 1825. In 1818, the Carrolls having been made responsible, upon their indorsements for Williams, to the Union Bank of Georgetown, filed their bill in the General Court of Kentucky, against Williams, and the Trustees, Brent and Key, to subject the lands conveyed in trust to sale, for their indemnity. In 1821 they obtained a decree for the sale of the lands in satisfaction of $27,280, the amount of principal and interest of their incurred responsibility to the Union Bank aforesaid, and a commissioner to make sale and conveyance was appointed, who sold the same at public auction, upon due advertisement, and the Carrolls became the purchasers, as the highest bidders, of the 4000 acre tract at $8000,

and of the other tracts at $3600; and the commissioner, under the order of the Court, made a conveyance to them, for and on behalf of Williams, as well as of the Trustees, which was examined and approved by the Court in January, 1822, and acknowledged and ordered to record; a decree rendered in favor of the Carrolls for the residue of the demand unsatisfied by the sale of the land and execution ordered against Williams. In October, 1823, Charles Carroll conveyed to his son, Charles H. Carroll, his undivided interest in all the lands acquired by the purchase at the commissioner's sale, for the valuable consideration of $10,000, the two Carrolls having been let into possession under their purchase. In 1830, Charles H. Carroll and Daniel Carroll executed to each other deeds of partition for the lands; and in March, 1837, and before publication was made or process executed on the defendants in this suit, Daniel Carroll conveyed his moiety of the land to Trustees, in trust for the payment of a large amount of debts, owing by him, to the Bank of Washington.

In December, 1836, the Bank of the United States, claiming, by assignment, the debt secured to the Bank of Columbia, by the deed of trust aforesaid, and also the lien to secure it, in conjunction with Kurtz, the Trustee, instituted this suit in chancery, in the Oldham Circuit Court, (in which county the 4000 acres now lies,) against Daniel Carroll and the heirs of Charles Carroll, and the heirs of Williams and others, to subject the land to the payment of their debt. They alledge that a bill has been filed in the General Court to review and set aside the decree in favor of the Carrolls; that the Carrolls had notice of their deed of trust, and of the debt secured by it, before and at the time of commencing their suit, and before and at the time of their decree and purchase of the land; and that the debt secured to the Bank of Columbia was a partnership debt, for which the Carrolls, as former partners, were bound, and charge fraud in the execution of the deed of trust for their benefit, and fraud in the proceedings, decree and sale under it; and pray that the defendants, or some of them, may be decreed to pay to the Bank of the United States, the debt secured to the

Bank of Columbia, and on failure, that they be forever foreclosed of their equity of redemption, and the land sold to satisfy the same, and for general relief.

Daniel Carroll and William T. Carroll and Charles H. Carroll, the sons of Charles Carroll, deceased, (the latter being his executor,) and some of the infant heirs, answer the bill, and a general traverse is entered for the residue, they all being non-residents. They deny notice until long after the decree and purchase and conveyance under it; deny fraud in their deed, or fraud or irregularity in the obtention of their deed, or acquisition of title under it, and claim to be innocent purchasers for a valuable consideration; set out the continued quiet possession under their title; the making of valuable improvements on the 4000 acres, and the subsequent partition sale and conveyance, in fee and in trust, for a valuable consideration, and charge that the officers of the Bank of Columbia and of the United States, were well apprized of their deed of trust and the proceedings under it, and acquiesced in their fairness, priority and regularity, until about the time this suit was instituted.

*Answers and traverse.*

There is no evidence that the Carrolls had notice of the complainant's lien until some time after their purchase under their decree. But there is evidence tending to establish that some of the officers of the Bank of Columbia had actual notice of the deed of trust for the benefit of the Carrolls, and of the proceedings under it, at least within some year or so after the sale. The evidence is clear and satisfactory, that the debt to the Bank of Columbia was not a partnership debt, nor a debt for which the Carrolls were, in any wise, responsible, and there is no fraud or unfairness established in the deed of trust under which the Carrolls claim, nor in the proceedings, decree or sale under it.

At the March term, 1840, the Circuit Court decreed that the complainants had the right, and be permitted to redeem the lands purchased by the Carroll's, by paying to them the amounts secured by their deed of trust: and to ascertain, settle and state more certainly, the amounts so due, and interest thereon, an Auditor was appointed in the District of Columbia, with directions to take proof,

*Decree of the Circuit Court.*

&c. allowing the accounts to stand, so far as the same were settled by the decree of the General Court. An Auditor was also appointed in the county to take proof and adjust the accounts for improvements and profits. The first Auditor reported seven items of account, amounting in the aggregate, principal and interest, to the sum of $75,465 12 cents. The last Auditor reported that the profits were balanced by the value of the improvements and an account is not raised on either side, but the proof reported upon which he was brought to that conclusion. At the March term, 1842, the Court sustained exceptions to, and rejected the items No. 5, 6 and 7, in the first Auditor's report, and corrected and reduced the other items; sustained the second Auditor's report, and finding the balance secured by the Carroll's deed of trust, with interest, to be $62,184 33 cents, ordered that the complainants pay the amount to the Carroll's, on or before the next term of the Court, and on their failure to do so, that their bill would be dismissed, and on their making payment, that a further decree would be rendered in their behalf, as the nature of the case required, and a cross bill of Charles H. Carroll, against Wickliffe and Scott, was dismissed at his costs. At the June term following, the complainants having failed to make payment, as required by the interlocutory decree of the previous term, their bill was dismissed at their costs, and they have brought the case to this Court for revision.

Errors are assigned and objections raised to many of the steps taken in the Court below, in the progress of the case, some of which only we deem necessary to be noticed.

1st. Though the Circuit Court, on the motion of either party, should have stricken from the record, scraps and parcels of records, copies of letters and all irrelevant and incompetent matter, yet the omission to do so is not ground for the reversal of the decree upon the merits, there being enough of competent evidence in the record to sustain it.

2d. There seems to have been no opinion of the Circuit Court given, in relation to the amount of costs, certified by Thompson and Morrell, the Commission-

ers appointed to take depositions in the District of Columbia. If the costs certified were excessive and unauthorized, they might have been corrected, and may yet be corrected by motion to the Circuit Court; and in case the Court errs in overruling the motion upon a proper case made out, or in refusing to correct or reduce the amount, if it should be reduced, the error may be corrected in this Court. But the bare omission to give any opinion in relation to those costs, cannot be a good ground for reversing the entire decree, upon the merits, and especially as those costs have not been estimated in, or made to form a component part of the amount decreed to be paid.

3d. If it were proper to allow the complainants to redeem, the Court acted in accordance with the well established practice in such cases, in refusing to open the accounts as settled by the decree of foreclosure, in the case in the General Court, there being no collusion shown: *Hains* vs *Beach*, (3 *John. Chy. Rep.* 465,) and the cases there referred to. The amount thus settled being allowed, interest from the rendition of the decree should also be allowed, as the amount has never been paid or any part of it, except by a sale of the land, and the complainants seek to set aside the sale and be allowed to redeem, which surely ought not to be granted upon any other terms than the payment of the interest as well as the principal secured by the prior deed of trust. Indeed, in cases of foreclosure, without notice of a junior incumbrance, the latter has not been allowed to redeem in many cases, upon other terms than, not only the payment of the principal and interest, but the payment of all costs and charges, ordinary and extraordinary, the senior mortgagee has been subjected to in obtaining a foreclosure: *Lomax* vs *Hide*, (2 *Vernon*, 183;) *Liggett* vs *Edwards*, (*Hopkins' Chy. Rep.* 550.) Nor did the Court err in allowing other demands secured to the Carrolls by the deed of trust, and not brought into the account or ascertained and settled by the decree, to be inquired into, ascertained and added to the amount, which the complainants were required to pay to them, upon being permitted to redeem; and the more especially as the bill was dismissed without prejudice as to those claims.

Junior mortgagee is not permitted to redeem, but upon payment of principal, interest and costs, and charges, ordinary and extraordinary, where prior mortgagee had not notice of junior mortgage:— *Lomax* vs *Hide*; *Liggett* vs *Edwards*, (*Hop. Ch. Rep.* 550.)

BANK U. S. &c.
*vs*
CARROLL, *et al.*

It is not error to refuse to continue a chancery cause on account of the absence of one of two counsel.

4th. Nor can we say that the Circuit Court abused a sound discretion, in refusing to continue the cause upon the affidavit of one of the complainants' counsel that he had been summoned as a witness to another Court, and was, therefore, unable to attend to argue the case at the term the cause was set down for trial. The case had been for years hanging on the dockett, and one of the complainants' counsel was in attendance, and if it were essential for the other to attend, he might, at his peril, have refused obedience to the summons, and attended to the discharge of his more pressing duties as counsel. Moreover, it appears that the interlocutory decree was not rendered until the subsequent term, nor the final decree until some two years afterwards, so that a full opportunity was afforded the counsel to present his views, by written argument at least, and perhaps by oral argument also, had he thought fit to petition the Court for a re-hearing.

This Court will not interfere with the discretion of the Ct. Courts in the rigid exercise of their discretion, in the preparation of causes, if there be no palpable abuse of legal discretion.

5th. Nor can we admit that the Circuit Court erred in refusing leave to the complainants to file an amended bill, or a bill of review, after the interlocutory decree had been rendered, setting up credits against the demands of the Carrolls: First, Because such amended bill or bill of review, was not necessary to enable the complainants to have proved those credits and set them up, if they existed. Secondly, It was not satisfactorily shown that those credits could be established by a further delay of the cause; and, Thirdly, If those credits existed, they originated from a public sale of property in the District of Columbia or the vicinity, where the agents and officers of both Banks resided, and the accounts, on both sides, accrued, and must have been of public notoriety, and could have been before ascertained and established, by the use of the most ordinary diligence. Besides, it has been often stated by this Court, that much discretion is to be allowed to the lower Courts, in the control and preparation of causes for trial, with a view as well to the ends of justice, as to the speedy termination of legal controversies. And this Court will not reverse their decrees or judgments for a rigid exercise of their powers in those matters, provided they have not been guilty of a palpable

abuse of legal discretion, to the manifest injury of the parties.

Upon the merits, we would remark: 1st, That if the decree of the General Court could be reviewed and over-ruled by a proceeding in the Circuit Court of Oldham, it has already been determined by this Court, in the case of *Williams' heirs* vs *the Carrolls*, that there was no such error or irregularity in the proceedings or decree, as to render it void, or subject it to annulment. Nor is there any foundation for the imputation of fraud in its obten-tion, or in the sale under it.

2d. If a redemption was allowable and proper in be-half of the complainants, it is questionable whether the bill has been so framed in the present case as to author-ize such relief. No offer to redeem is made, or prayer to that effect. So far from it, the bill does not recognize the validity of the prior lien, or proceedings on it, nor ask a foreclosure or sale, for the satisfaction of their lien, upon the terms of their redeeming the Carrolls' prior lien, but controverts both their deed of trust and decree, and asks specifically, that the defendants may *pay them their* money; and on their failure to do so, that *they* may be forever *foreclosed of their equity of redemption*, and the land sold to satisfy their debt. The deed of trust for the benefit of the Carrolls being valid, and prior in time to that of the complainants, their specific prayer cannot be granted, but they, according to well established prece-dents, could be entitled to relief only upon the terms of *paying the money* to the Carrolls, secured by their prior deed, and *redeeming their prior lien:* (1 *Kent's Com.* 177, *note a.*) This has not been *offered* or *asked* by the bill. He who seeks equity must *do* it, or *offer* to do it, and it is certainly equitable that the prior lien should be first satisfied; and he who asks the Chancellor to disturb rights acquired under it, can be allowed to do so only upon the terms of paying off the debts secured by it, and all in-terest and costs, and necessary expenses incurred. Full equity should be done, and it will not be done upon any less terms: (2 *Vernon*, 183, *supra;* 1 *Hopkins' Chy. Rep.* 550, *supra.*)

BANK U. S. &c.
vs
CARROLL, et al.

Has a junior
mortgagee a right
to redeem after a
decree and sale
under a senior
mortgage, the se-
cond mortgage
being unknown
to the first mort-
gagee?—QU.

3d. But conceding that under the facts stated in the bill and answers, and the general prayer of the former, that the right of redemption might be granted, in a proper case, for such relief, it is a question of serious import and greatly to be doubted, whether in a case like the present, of a foreclosure and *sale* under a prior lien, in satisfaction of the same, and purchase for a valuable consideration, and reception of the legal title, without notice of a junior outstanding, dormant incumbrance or equity, in the hands of a third and unknown incumbrancer, can be overreached or subjected to the right of redemption of such secret holder of the outstanding equity; or whether such secret holder of a mere *junior equity* shall be allowed to set up his unknown *mere* equity against the claim of an innocent purchaser and holder of the *legal title.* If he can be allowed to do so, it is certainly a departure from that general rule of equity, which affords protection to the holder of an equity combined with the legal title, innocently acquired, and for a valuable consideration; or is rather an exception to that general rule in Courts of Equity, by which they are restrained from affording relief to a mere equity, against those who are armed with both equity and law. This departure is attempted to be justified upon the ground of *inconvenience* and *oppression* to the holder of the outstanding equity, to be barred and precluded of his equity by a proceeding to which he was no party, and had no opportunity to be heard. On the other had, it would seem equally inconvenient and oppressive to the senior mortgagee, to be compelled to search the whole world over to find out all subsequent incumbrancers, in order to make them parties, or be subjected to have his decree uprooted; and more oppressive to the innocent purchaser, who, under the sanction of a solemn judicial decree, should bid for and believe he was obtaining an absolute fee simple title, free from outstanding equities, if he should be subjected, not only to be drawn into litigation at any remote period, but should also have his land and house and possessions wrested from him, and be turned out to seek another habitation, upon the terms only of having his money and legal interest refunded, which, owing to the probable and cer-

tain increase in the value of lands, if the country be new, may be wholly inadequate to pay for and enable him to acquire a new home and residence. If this can be justified and sustained on equitable principles, it can alone be justified and sustained on the ground, that as the lagal title was passed *coercively*, under the action and decree of a Court of equity, that Court will not permit it to be available to protect the purchaser against the holder of an equity who was no party to the proceedings. This circumstance can constitute the only difference between an innocent purchaser at a private sale, and a purchaser under a decree of foreclosure and sale; each acquires the legal title innocently and has equal equity. The private purchaser would certainly be protected, while the purchaser under a decree, it is said, would not be.

It would seem to us that the highest sanction should be given to judicial sales, as well for the benefit of purchasers and to secure the confidence of the community in the acts of judicial tribunals, as for the benefit of creditor and debtor, both of whom are interested in the property that is sold commanding a good price. No one will bid more than a nominal price if it be established that he is liable to be harrassed and his purchase upropted and defeated by latent outstanding equties, of which he can have no knowledge; and the consequence must be, that property sold under a decree of foreclosure and sale must be sacrificed.

The highest sanction should be given to judicial sales. Confidence of the community in the acts of judicial tribunals is for the benefit of both debtor and creditor.

Yet Chancellor Kent, whose opinion is always entitled to the highest consideration, has determined, in the case of *Hains* vs *Beach*, (3 *John. Chancery Rep.* 461,) that the subsequent incumbrancer, who was not made a party, has a right to redeem even against a purchaser without notice. And this Court, in the case of *Cooper, &c.* vs *Martin, &c.* (1 *Dana,* 23,) following the opinion of the Chancellor, has, with hesitation and doubt, determined this question in the same way, yielding to authority, (they intimate,) rather than to the conviction of their own judgments. And the Chancellor, in his Commentaries, 4*th vol.* 177, has laid down the law as thus settled. It will be seen in the case of *Hains* vs *Beach, supra,* that the authorities cited by the Chancellor are either

BANK U. S. &c.
*vs*
CARROLL, *et al.*
cases of simple foreclosure under the English practice, and not cases of foreclosure and sale, according to the general practice in this State, or cases in which the principle is merely asserted, that junior incumbrancers are necessary parties, and should be brought before the Court in a proceeding to foreclose; and the learned Chancellor deduces the conclusion, that the necessity of allowing a redemption in cases of sales under their practice, is much stronger than in cases of mere foreclosure, "for otherwise the mortgagor would take the *surplus money,* or the cash value of the equity of redemption, and defeat entirely the lien of the subsequent creditor." The evil that he perceives would rarely if ever occur under our practice, as so much of the mortgage property only is sold as is necessary to pay the mortgage debt, leaving the residue in the hands of the mortgagor, and of course still subject to the junior incumbrancers.

That junior incumbrancers are *proper* and *necessary* parties to a *fair* and *equitable* determination of the controversy between all concerned is admitted, as all persons *interested* are proper and necessary parties in chancery to that end. But it does not thence follow, as we conceive, that if they are not made parties, and a decree passes which acts upon the legal title, and a sale and purchase under it, by which the legal title passes into the hands of an innocent purchaser, without notice of such outstanding equity, that the holder thereof may afterwards, by a subsequent proceeding, set up his dormant equity and subvert the title of the purchaser. They may be *necessary* parties, and it may be, and certainly is, highly proper that they should be brought before the Court; and it may, be that if they are not, that their interests are not barred by a *mere foreclosure,* but if they are unknown, and are not brought before the Court, they may still not have the right afterwards to bring to light their previously concealed equity, and with it overturn the legal title of the purchaser.

And we think that there is a decided difference between the case of a simple foreclosure and a sale, operating more favorably to the propriety of redemption in the former than in the latter case. In the former case there *is*

Though a junior mortgagee may be a proper and necessary party, if known to the senior mortgagee in his suit for a foreclosure and sale, it does not follow that if he be not known, and a decree of foreclosure and sale be made, that an innocent purchaser should be deprived of the benefit of his purchase.

no change of the legal title upon a new consideration. The decree merely *bars* the *equity* of redemption, leaving the *legal title* in the mortgagee, where it was before placed by the contract of the parties. And the property thus acquired by the foreclosure, may be three, four or ten times the value of the debt secured, and sufficient to pay the debts of the subsequent incumbrancers, as well as that of the prior: but being barely sufficient, the mortgagor may feel no interest in defending nor in disclosing the subsequent incumbrances, nor in making any effort to redeem; and thus the real owners of the equity, by a naked decree, to which they were no parties and had no opportunity afforded them to set up their interest, might be forever barred, and the senior mortgagee be allowed to enjoy the whole estate, though worth ten times the value of his debt. But in a sale, if it be fair, and made at public auction, and upon due and proper notice, (which the Chancellor should always prescribe and enforce,) the property sold must be presumed and will generally command about its value, at the time, and so much only being sold as is necessary to discharge the prior lien, the subsequent mortgagee is not injured and the prior not benefitted beyond the amount of his debt, whereas the innocent purchaser for value at the time, might be greatly injured, by subjecting him to the right of redemption at a remote period, when a change of times may have produced an essential change in the value of the property purchased.

In the case of simple foreclosure, an infant is allowed time to show cause against the decree after he attains full age though he be a party to the proceeding. But in the case of a sale, as the title passes to the purchaser, though he be no party, he may be at once barred of his right, without allowing time after he attains age: (3 *Powell on Mortgages*, 983–4–5, *and notes.*) And cases are not wanting in the English books, in which, after a decree of simple foreclosure, the right of redemption has been allowed at the instance of one who was a party to the former proceedings, upon the most trivial grounds, (3 *Powell on Mortgages*, 1006–7–8–9,) and has been refused after the mortgagee had sold to a third person, who occu-

BANK U. S. &c.
vs
·CARROLL, et al.

pied the condition of an innocent purchaser: (3 *Powell on Mortgages*, 1001, *note H, and* 1002, *latter part of note* 1, 1006, *notes.*)   The fact that a redemption will be refused in the latter case, because he is a purchaser, though he claims under a decree only, barring the equity of the mortgagor, would strengthen the conclusion that when he claims as an innocent·purchaser, under an absolute sale, directed by the Court, that he ought not to be disturbed: (3 *Powell on Mortgages*, 1006, *note.*)   And in the case of *Toulman* vs *Steer*, (3 *Merivail's Chy. Rep.* 221,) the right of an incumbrancer, (an annuitant,) to disturb the title of a purchaser, acquired under the order of a Court of Chancery, was made to turn exclusively on the *notice* which the purchaser had of the outstanding accounts at the time of his purchase.   And we have been able, in our researches, to meet with no case in the English books, where a *sale* and *acquisition* of *title*, by an innocent purchaser, has been overreached by a junior incumbrancer.   But if the distinction here taken be untenable, and it be conceded that the right of redemption in cases of sale, as well as in cases of mere foreclosure, in instruments properly denominated mortgages, should be allowed, may it not still be doubted whether in deeds of trust, where the legal title is vested in third persons, as trustees, such right of redemption should be allowed.   When the trustee has power to sell for the payment of the debt, under a prescribed form of notice, surely if he should sell and pass the title to a purchaser, without notice, he would not be subject to be redeemed.   Or if the trustee, in conjunction with the original owner, should sell and convey to a purchaser without notice, of an outstanding equity, and for a valuable consideration, he could not be disturbed in his purchase.   Our statute, which prohibits a sale by a trustee, merely substitutes a Court of Equity in the place of the trustee, and a sale made under its decree, it would seem, should be equally binding and protective to the purchaser.   But if the right of redemption is allowable in a sale under both classes of deeds, it is still more to be questioned whether, as in this case, the claimants under the second deed of trust, after they have laid by and slept upon their rights, and permitted near

twenty years to elapse from the execution of their deed, and about fifteen years from the decree of sale and purchase, and many years after they were apprised of the proceeding, without asserting their claim, whether they ought to be now indulged in redeeming; and the more especially as the one moiety of the lands purchased had, fourteen years before the bill was filed, been conveyed by Charles Carroll, one of the original purchasers, to his son, Charles H. Carroll, upon a consideration, importing on the face of the deed, to be valuable and adequate, and the other moiety had been conveyed by Daniel Carroll, before process was served, or order of publication executed upon him, or any other of the defendants, to trustees in trust, to secure a large debt to a Bank, which it does not appear was ever paid.  We cannot admit that under circumstances manifesting such gross laches, that the complainants can be allowed to redeem, if even the right to redeem, as a general principle, were conceded.  After sleeping so long upon their rights, they should be permitted to sleep on, and not be permitted to disturb rights that have sprung up in the mean time, based on the purchase.

But 4th. Waiving all these considerations and conceding that the right to redeem exists in the case of a sale, as well as in the case of a mere foreclosure, (and we do not deem it necessary to settle this perplexing question definitely at this time,) we are satisfied that the decree of the Circuit Court, allowing redemption, was as favorable to the complainants as they had a right to ask.  The amount required to be paid, as the condition of the complainants' right to redeem, is sustained by the proof, and covered by the Carrolls' deed of trust.  Indeed the amount falls short of that which might, and in strict propriety should have been allowed.  The Circuit Court, in fixing the amount to be paid, rejected three items, which with interest, amounts to a large sum, namely, items No. 5, 6 and 7.  Giving to Williams' deed of trust a liberal construction, in effectuation of the objects intended, the security and indemnification of the Carrolls, we are strongly inclined to think that those items, or the whole of the 5th and two-thirds of the 6th and 7th, should have been added to and embraced in the amount decreed to be paid to the Carrolls.

Bank U. S. &c.
*vs*
Carrolls, *et al.*

The 5th item contains the fees and commissions of the officer who collected from the Carrolls, as indorsers ' of Williams, to the Union Bank, the amount for which the decree was obtained in the General Court, and which were not embraced in that decree. Those as costs accruing against the Carrolls, in collecting from them the debt of Williams, against which they were secured by the deed of trust, and evidently not set up nor embraced in the decree of foreclosure, ought, we think, to have been added to the amount to be paid to them upon the redemption claimed by the complainants. This item, with interest, amounts to $885 94. The 6th item rejected, is a charge of $1500 per annum for two years rent and occupancy by Williams, of the Columbia paper mill, after the dissolution of the partnership, the paper mill being the property of the late firm. The evidence is pretty satisfactory that he did occupy and work the paper mill at an agreed rent of $1500 per annum. This item, or the two-thirds of it, with interest, amounts to $4982 66⅔ cents.

The 7th item embraces the stock in trade, left in the possession of Williams at the dissolution of the partnership, and which was converted into cash and applied to his own use, and the two-thirds thereof never paid over to the Carrolls, which amounts, with interest, to $9008 46.

The question, with respect to the two last items, is, whether they are or are not embraced or covered and secured to the Carrolls by their deed of trust. We incline to the opinion, that by a liberal construction of the deed of trust, with a view to the indemnity intended, that both those items may be covered and secured by the 2d or 4th clauses of the same. The "advances," and "losses" of the Carrolls have been increased, and their "profits" diminished by reason of the withdrawal and misapplication of those funds to his individual use. And as the 6th item was the issues and profits of property belonging to the late firm, and the 7th was the proceeds of stock in hand, converted by Williams to his own use, and both of which, if applied properly, would have went to swell the profits or diminish the losses of the Carrolls, at least to the extent of their two-thirds of the amount, it would seem right to give such interpretation to the deed as will

afford them indemnity for their interest in those items; and we think that may be done without doing violence to its terms, its objects, or presumed intention of the parties.

And as the complainant's incumbrance was concealed in the vault of the Bank, and was unknown to have an existence at the time the Carrolls incurred the costs of the foreclosure and sale, it may be well insisted on, according to the well established rule in the case of *Lomax* vs *Hide*, (2 *Vernon*,) and *Liggett* vs *Edwards*, (1 *Hopkins' Chy. Rep.*) before cited, that the complainants, especially after they had been guilty of such laches and delay in setting up and prosecuting their claim, should not be allowed to redeem upon other terms than reimbursing the Carrolls all the *expenses* they have incurred, embracing the necessary fees paid to Attorneys, which, from the evidence of Bibb as to the amount paid to him, could not, to the two employed, have amounted to less than $1000.

If the foregoing items, or any of them, be added to the amount decreed by the Circuit Court to be paid, on redemption of the land, it will more than cover any credit or deduction to which the complainants may be entitled for rents or waste or sale of timber, if any such deduction should be made, which is not admitted from the proof in the cause, and may also be sufficient to cover any other credit to which Williams might have a semblance of claim.

The complainant's bill seems to have been framed with a view to a foreclosure and sale of the 4000 acres only, and the preparations made and steps taken, seem to have been directed mainly, if not exclusively, to that object. The Court, it is presumed, looking to the same end, deducted from the amount of the Carrolls' claims the amount of $3600, the sum at which the other tracts, than the 4000 acres, was stricken off to them in their purchase under the decree of the General Court, and ordered the balance of their claim to be paid to them by the complainants, as the condition of their right to redeem, on or before the next term of the Court; and that upon payment thereof, such further decree would be rendered in

their behalf as the nature of the case required. But no decree was rendered restricting or limiting the complainant's right to redeem to the 4000 acres; nor can this Court say, that had the sum fixed on and ordered to be paid, been paid, that the Court would not have allowed a redemption of all the tracts sold, upon the general allegations and prayer of the complainants' bill, had such redemption been asked, and upon such payment, that the Court would not have ordered a foreclosure and sale, not only of all the tracts embraced in common in the complainants' and defendants' deeds of trust, but also of those tracts embraced in the deeds of the complainants, lying in other counties, and not in the deed of the Carrolls. By the deduction of the $3600, and the interest thereon, the amount which the complainants were required to pay was less by some eight or nine thousand dollars, exclusive of the items before noticed, than the amount which they might have been required to pay, as the terms of their right to redeem. They cannot, therefore, complain that they have been prejudiced by this order, which imposed a less onerous duty upon them than might have been imposed; nor can they complain that their bill was dismissed on their failure to pay the lesser sum; nor can it be presumed that they would have paid the larger, had a redemption of all the tracts been indicated and promised them, on the terms of their payment. They have not been required to pay too much, nor have they been restrained by any distinct, tangible order or decree of the Court, from their right to redeem the *whole*. And had they, upon paying up the lesser sum, asked the Court to redeem all the tracts sold, we cannot say that the Court would have refused them the privilege, upon the terms of paying up the price for which the other tracts sold, with interest.

Nor can the complainants complain that they have not been allowed to foreclose and sell the other tracts lying in other counties, embraced in their deeds of trust, and not embraced in the deed of the Carrolls. The 4000 acres lying in Oldham, is the foundation upon which rests the jurisdiction of the Court to proceed in that county. A decree of foreclosure and sale of that tract authorizes

the Court to decree also a foreclosure and sale of the tracts lying in other counties, as the means of avoiding an unnecessary multiplication of suits and useless litigation. But the failure of the complainants to manifest their right to foreclose and sell that tract, defeats the jurisdiction and power of the Court to order a decree of foreclosure and sale of the tracts lying in other counties. The bill was, therefore, properly dismissed as to all the tracts, if even it be conceded that the allegations and prayer of the bill are broad enough to authorize a decree of foreclosure and sale of all the tracts embraced in the complainants' deed of trust.

It is, therefore, the opinion of the Court that the decree of the Circuit Court be affirmed with costs.

*Wickliffe* for plaintiffs: *Owsley & Goodloe and Lough-borough* for defendants.