## YORK COUNTY SAV. BANK v. ABBOT.

(Circuit Court, D. Maine.   July 31, 1905.)

No. 542.

1. JURISDICTION OF FEDERAL COURTS—LOCAL SUITS—APPEARANCE OF DEFEND-
ANT.

Where, in a suit in a Circuit Court of the United States against a non-
resident defendant, in which jurisdiction is sought to be maintained under
section 8 of Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901,
p. 513], providing for local suits, no service is obtained on the defendant
within the jurisdiction, it is settled that the entry of an appearance by
such defendant "specially and solely for the purpose of objecting to the
jurisdiction of the court," and the filing of a motion to dismiss, and, on
its being overruled, of a demurrer, do not amount to a general appearance
to give the court jurisdiction over the person of the defendant.

2. SAME—NATURE OF RELIEF SOUGHT—INABILITY TO ENFORCE POSSIBLE DECREE.

A suit in equity by a lessee against a nonresident lessor to enforce al-
leged rights under the terms of the lease by requiring the defendant to
elect either to sell the land to, or to buy the building thereon from, com-
plainant at an appraised value, or to have the court make such election
and carry the same into effect through a master or trustee appointed for
the purpose, is not within the jurisdiction of the Circuit Court of the
United States for the district in which the property is situated, by virtue
of section 8 of Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St.
1901, p. 513], where the defendant has not appeared.

In Equity.   On demurrer to bill.
See 131 Fed. 980.

Eben Winthrop Freeman and Enoch W. Foster, for complainant.
Brandeis, Dunbar & Nutter, and Bird & Bradley, for respondent.

PUTNAM, Circuit Judge.   This bill in equity was brought by a
corporation organized under the laws of Maine, now holding the
title and possession of the original lessee under the lease hereinafter
set out.   Martha T. Abbot is a citizen of Massachusetts, domiciled
in that state, and is the sole person named in the bill against whom either
relief or process is prayed.   No personal service has ever been made
on her within the jurisdiction of this court, and jurisdiction is sought
to be maintained solely under section 738 of the Revised Statutes,
as re-enacted by section 8 of the act of March 3, 1875, c. 137, 18 Stat.
472, 473 [U. S. Comp. St. 1901, p. 513].   The essential portions of
section 8 are as follows:

"When in any suit, commenced in any Circuit Court of the United States,
to enforce any legal or equitable lien upon, or claim to, or to remove any in-
cumbrance or lien or cloud upon the title to real or personal property within
the district where such suit is brought, one or more of the defendants therein
shall not be an inhabitant of, or found within, the said district, or shall not
voluntarily appear thereto, it shall be lawful for the court to make an order
directing such absent defendant or defendants to appear, plead, answer, or
demur, by a day certain to be designated, which order shall be served on such
absent defendant or defendants, if practicable, wherever found, and also upon
the person or persons in possession or charge of said property, if any there be;
or where such personal service upon such absent defendant or defendants is
not practicable, such order shall be published in such manner as the court may
direct, not less than once a week for six consecutive weeks; and in case such
absent defendant shall not appear, plead, answer, or demur within the time

so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

This same cause was before us on a motion to dismiss the bill, which motion was disposed of in accordance with the opinion passed down on August 18, 1904. York County Sav. Bank v. Abbot (C. C.) 131 Fed. 980. The basis of that motion as shown in the opinion related mainly, if not entirely, to the merits of the case. The points made were that there was no obligation binding on Martha T. Abbot; that this court had no jurisdiction unless there was an obligation enforceable against the land; that, if there was an obligation, it was not one enforceable against the land; and that, if there was an obligation in any respect enforceable against the land, it was not enforceable in this court. In disposing of that motion we observed that, whatever disposition might then be apprehended, we were confident some form of relief would be found, although it was not then prudent to forecast its particular character, nor could we then do so with certainty. It is important to understand and explain the position thus assumed on the previous hearing.

After the motion to dismiss was disposed of, Martha T. Abbot filed a general demurrer. On that demurrer new propositions bearing on the question of jurisdiction have been specifically brought to our attention and urged upon us. Among the rest is that we have no jurisdiction to enforce a personal contract, so that, if Martha T. Abbot should see fit to declare an election to purchase when the complainant calls upon her to act, we would be powerless to enforce any obligation in that direction. It is to be regretted that in this way the order of this case has been in a certain sense reversed, and that, on the motion to dismiss, propositions relating to the merits were called to our attention, while this proposition, which bears directly and solely on the question of jurisdiction, was delayed until brought here on demurrer. We must add, however, that in one way there may be an advantage arising from this fact, because the proposition now urged upon us might not have been fairly understood by us until we were forced to give attention to the merits of the controversy and to the actual detailed relations of the parties with reference to the terms of the lease.

The complainant has relied on the fact that we have heretofore refused to dismiss the bill for want of jurisdiction, and especially on some observations made in our former opinion in reference thereto; but it is the duty of this court always to take under consideration questions of jurisdiction, and to dismiss a suit at any stage of the proceeding when it is apparent that it is coram non judice. In addition to that, we may well observe that it would be a misfortune if we take jurisdiction, involving apparently protracted and costly litigation, all to prove of no avail in the end for want of authority

on our part to proceed; while, on the other hand, on a question of the character which we must now investigate, the parties have a summary relief by proceeding directly to the Supreme Court under the judiciary act of July 3, 1891, as shown by a résumé of the cases in Remington v. Central Pacific Railroad Company, 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959, and Board of Trade v. Hammond Elevator Company, 198 U. S. 424, 25 Sup. Ct. 740, 49 L. Ed. 1111.

Although the issue of jurisdiction is open at any stage, yet, inasmuch as some questions of jurisdiction may be waived, and the respondent has demurred, it becomes necessary for us to examine whether or not Martha T. Abbot is still an "absent defendant without appearance" within the meaning of those words in the extract which we have made from the act of March 3, 1875.

Subsequent to the return date of the order against an absent defendant which was made in accordance with that legislation, Martha T. Abbot, by her attorneys, entered an appearance, as follows:

"The clerk will 'enter our appearance for the defendant, Martha T. Abbot, specially and solely for the purpose of objecting to the jurisdiction of the court."

As to this, we may observe that the settled rule in the federal courts is not that which to some extent formerly existed in England, by force of which a party named as a defendant, by appointing an attorney of a particular court, submits himself to the jurisdiction of that court for all purposes whatever which are susceptible of being reached by waiver, and this to the extent that appearances of this character and motions consequent thereon must be signed by the party in person. Under the practice of the federal courts, there can be no question that this appearance was not such an appearance as was referred to in the concluding paragraph of section 8. Radford v. Folsom, 123 U. S. 725, 727, 8 Sup. Ct. 334, 31 L. Ed. 292.

After the motion to dismiss was refused, Martha T. Abbot demurred, as we have said; but in the demurrer she stated that she appeared specially for the purpose, did not submit to the jurisdiction of the court, and did not waive her objection to the jurisdiction theretofore taken by her motion to dismiss; and she added that she expressly insisted on that objection. Inasmuch as she first appeared to move to dismiss, and her motion to dismiss was refused, a subsequent appearance by her on demurrer cannot be regarded as voluntary, and must be held to have been forced by the refusal to dismiss; so that thereby her motion to dismiss was not waived. Her appearance was not an appearance within the meaning of the eighth section of the act of March 3, 1875, and all questions of jurisdiction which might have been raised under the motion to dismiss are now available as of the time of that motion. All this was fully settled in Southern Pacific Company v. Denton, 146 U. S. 202, 204, 206, 13 Sup. Ct. 44, 36 L. Ed. 942, where a series of proceedings occurred precisely like those at bar. It may as well be observed that the headnote in that case is not in all respects correct. because there did not exist any want of diversity of citizenship necessary to give jurisdiction to a Circuit Court of the United States.

The question was one of residence, or domicile, which would have been waived by a general appearance without any protest as to jurisdiction, precisely the same as in the case at bar. Therefore our jurisdiction, as we have said, still rests entirely on the eighth section of the act of March 3, 1875, and must be supported by it if at all. Our powers, therefore, do not go beyond what is provided for by that act, so that we have none except to dispose of what may well be called the res, and therefore none to issue a personal decree against Martha T. Abbot which would be effectual in law. Consequently, notwithstanding the views which we have heretofore expressed, if the case before us is of such a character that the lien which may be ultimately decreed cannot be made effectual except by some personal act of the respondent which we have not the power to compel, it is too plain to need discussion that the matter of our jurisdiction must be determined by an examination of the underlying question whether we are able to give an effectual remedy in every view of the form which the ultimate determination of the merits may take. In order to make clear the result of this determination, it is necessary to restate the facts, which are in part stated in our previous opinion. The lease is as follows:

"U. S. I. R.    This Indenture made the first day of October in the year
$1.00      of our Lord one thousand eight hundred and sixty-seven,
E. S.      Witnesseth: That Eben Steele of Portland doth hereby
Oct. 3, '67.   lease, demise, and let unto Thaddeus C. Lewis, of said
Portland, a store lot on the northerly side of Middle Street, in said Portland, between the lot now owned by the heirs of the late Martha F. Trask, and the lot now owned by David Keazer, and which was conveyed to me by the Ocean Insurance Company, by deed dated May 6, 1847, and recorded in the Cumberland Registry, Book 203, Page 71, a division of the whole lot having afterwards been made, between said Steele and said Trask heirs, owners, of the other moiety, and the Eastern half conveyed to said Steele, in severalty, which is now hereby leased to said Lewis, subject to the agreement of April 20, 1831, between William McLellan and others, and recorded Book 126, Page 158.

To hold, for the term of twenty-five (25) years from the first day of October 1867, yielding and paying therefor, the rent of four hundred and fifty dollars per year. And the said Lessee doth covenant to pay the said rent in quarterly payments, as follows, viz. One hundred and twelve $50/100$ dollars, on the first day of January, April, July and October annually; and also within one year, to erect on said premises a store of three stories of brick, iron and stone, of good style, and to continue to maintain on said premises, such building, or one of equal value during the term, and to pay all taxes duly assessed thereon, during the term, and for such further time as the Lessee may hold the same. At the end of said term of twenty-five years, the Lessor, or his representatives, shall have the privilege of extending this lease, by a perpetual lease forever, to the Lessee, or his assigns, at the above described rent and taxes; or, if the Lessor, or his assigns or representatives prefer, they may have an appraisal, of the lot, and building thereon, with the option on their part, of purchasing such buildings at such appraised value or of selling to the Lessee or his representatives, the lot at such appraised value, whichever the Lessor, his assigns, or representatives may then elect. Each party, on request, to choose an appraiser, and the two selected, to choose a third; and if either party neglects to choose an appraiser, such appraiser is to be selected for such party, by the Judge of Probate of Cumberland County: and the appraisal of a majority of such appraisers to be conclusive in case of disagreement.

And the said Lessee doth hereby covenant, for himself, his heirs and representatives, to purchase said lot at such appraisal, or to convey said building to the Lessor, or his representatives, according to the decision and election

of said Lessor, or his representatives or to execute and complete a perpetual lease of said lot, as before stipulated, at the end of said term, if the Lessor, or his representatives shall demand such lease. The building erected on said lot is hereby pledged and conveyed to the Lessor, his heirs, executors, and assigns, as security for the faithful performance of this agreement, and every covenant therein by the Lessee, his heirs, executors or assigns. And the Lessor may enter, to expel the Lessee, and his assigns, if he or they shall fail to pay the rent aforesaid, whether said rent be demanded or not, or if they shall violate any of the covenants of this lease, by them to be performed.

In witness whereof the parties have hereunto set their hands and seals, the day and year first above written.          Eben Steele          [Seal.]
    In presence of                                  Thaddeus C. Lewis    [Seal.]
        Thomas R. Hayes.
        Woodbury Robinson."

The lessee's interest under the lease of October 1, 1867, is vested in the complainant. The lessor, Eben Steele, died in 1871, and devised his interest in the leased premises to Abby A. Steele and Martha T. Abbot. Mrs. Abbot, in 1876, released all interest to Miss Steele, and on the death of the latter, in 1898, by inheritance became sole owner. Abby A. Steele, it is alleged in the bill, did not, after the expiration of the lease, exercise her right to elect to extend the lease as a perpetual lease, and neither she nor Mrs. Abbot at any time prior to June 1, 1899, or thereafter, requested the complainant to appoint an appraiser. On June 1, 1899, the complainant in writing requested Mrs. Abbot to choose an appraiser, but she refused to do so. Thereafter, and prior to November 10, 1899, the complainant selected an appraiser, and on November 10, 1899, applied to the judge of probate for Cumberland county to appoint an appraiser; and the judge, after giving notice to Mrs. Abbot of such application, did appoint an appraiser, and these two selected a third. The appraisers subsequently notified both parties of their intention to appraise the premises at a time and place specified, and at such time and place did appraise the building at $3,500 and the land at $2,887.50, and notified the parties thereof. On August 24, 1900, the complainant requested Mrs. Abbot to exercise her option to purchase the building from, or sell the land to, the complainant, each at the appraised price, and notified her of its willingness to abide by and carry out such election by her; but she did not do either. On October 30, 1900, the complainant tendered to her for execution a quitclaim deed of the land and $2,887.50 in payment therefor, and tendered a bill of sale of the building for delivery on payment of $3,500, but she refused to accept either offer.

The bill prays that Mrs. Abbot be ordered to elect whether to buy the building from, or sell the land to, the complainant, each at the appraised price; that the court appoint a master to exercise this right of election; that the court itself exercise this right of election; that the court order Mrs. Abbot, pursuant to the election thus made, either to pay to the complainant $3,500 for a bill of sale of the building, or execute and deliver a deed of the land for $2,887.50; that the court appoint a master or some suitable person to execute the order made under the preceding prayer; that the court restrain

Mrs. Abbot pending the suit from incumbering or transferring the property; and for general relief.

Of course, if we proceed to final or interlocutory decree, we would be compelled by that decree to determine according to just and legal consideration whether Martha T. Abbot should convey the land and accept the appraised value thereof, or should accept the building and pay the appraised value of it. If the court should determine that the land should be conveyed by her, there would be no difficulty, under the act of March 3, 1875, in appointing a master to make the conveyance in the event Mrs. Abbot refused to execute a deed, permitting the price therefor to be deposited in the registry of the court, where further disposition might be made of it. This would fully accomplish in that direction the purpose of the bill, and would all be justified under the act named, and would therefore be within the power of the court. On the other hand, if on just and legal considerations we should conclude that the building should be conveyed to Mrs. Abbot, we would have no power to accomplish the decree, and our jurisdiction would thus ultimately fail. Such a determination—that is, that Martha T. Abbot should receive the building and pay therefor—in order to be effectual, would involve a personal decree against her for the price of the same. We have carefully examined all the decisions of the Supreme Court relative to section 738 of the Revised Statutes and the act of March 3, 1875, revising the same, and are unable to find any authorization from that court to proceed to such a decree. While in some of the cases determined by that court the rights of an absent defendant who has not appeared have been effectually disposed of, in none of them has any mere personal act on the part of the absent defendant been a necessary element. In Robertson v. Carson, 19 Wall. 94, 22 L. Ed. 178, and McBurney v. Carson, 99 U. S. 567, 25 L. Ed. 378, the co-operation of the absent defendant, who was a mortgagor in a mortgage which had been unlawfully discharged, was necessary to protect his own rights; but such co-operation was not necessary to secure such an effectual disposition of the property as would restore the rights of other parties to the litigation. Therefore the cases are not in point. In Jellenik v. Huron Company, 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647, where there was in dispute the title to shares of corporate stock issued by a corporation whose domicile was in the district where the litigation occurred, it is apparent from what appears at pages 11 and 12 of 177 U. S., page 563 of 20 Sup. Ct. (44 L. Ed. 647), that the corporation could, by the laws of the state where it was created, make an effectual transfer of the stock without the personal act of the absent apparent holder of the certificates. Therefore that case is not in point. No decisions of the Supreme Court can be found approaching so near the case at bar as the three we have cited. On the other hand, in view of the fact that the statute of the United States on which this bill rests was built up from analogous legislation of various states which had been several times before the Supreme Court, Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, is in point, although it relates to local, and not congressional, action. There it was declared that the statute in controversy had

139 F.—63

no application to suits in personam, although sufficient authority for the institution of suits in rem. So the eighth section of the act of March 3, 1875, expressly declares, in accordance with the extracts which we have made from it, that our adjudication shall, as regards an "absent defendant without appearance," "affect only the property which shall have been the subject of the suit," which shall be under the jurisdiction of the court and within the district. We have shown that, so far as Mrs. Abbot is concerned, there is no such appearance; so that therefore this provision of statute is especially obligatory on us, and, consequently, we cannot give complete relief according to the terms of the bill. It necessarily follows that we have no jurisdiction whatever.

We have given the case very careful consideration, with a very strong desire to furnish the complainant relief if we could do so. Inasmuch as the lease provided that the lessee should not only construct on the leased premises a building of peculiar character—that is, a store of three stories of brick, iron, and steel, and of good style— and also required the lessee to continue to maintain such building, or one of equal value, during the whole of the term, the relations of the parties on this account are substantially different from what they were in any case cited to us on either side. Had the lessee been permitted by the lease to occupy the premises as he saw fit, to construct a building or not, as he found for his interest, and thus to construct it, if at all, in such manner that it might be easily removed as a building, instead of, as required, of such a character that it could only be taken down and removed as mere material, it might well have been said that the parties were content that he should take his chances to make himself whole out of the leased property during the term; but, with the requirements which we have stated, the presumption is almost inevitable that the parties to the lease did not contemplate leaving the various interests in the unfortunate condition in which they would be if the position of Mrs. Abbot is correct. Therefore it might well be understood that, if it were possible to so construe the lease as to dispose of all the interests of all the parties to it so as to secure their intrinsic value, such a construction would be given it. However, as we have no jurisdiction over the case, it is not within our province to express any decisive views with reference to the merits of the question which the complainant has sought to present.

On the other hand, we cannot overlook the fact, as we have said, it would be unfortunate if we should proceed to a determination of this case on its merits, with the result that it should finally be determined by the appellate tribunals that the whole was fruitless for lack of jurisdiction over the bill before us. As we have said, we understand the question involved to be within that class of questions of jurisdiction which may be immediately certified to the Supreme Court. If the parties are of the opinion that, in order to take the case to that tribunal, a certificate is necessary in accordance with the judiciary act of March 3, 1891, they may seasonably prepare and submit the same to the court. Meanwhile, we will make such an

order as will reserve all rights of the complainant in the event it desires hereafter to proceed against the respondent in some court having jurisdiction in the state or district of her domicile.

Let there be a decree, under rule 21 (31 C. C. A. clxiii, 90 Fed. Id.) dismissing the bill for want of jurisdiction, the same to be without prejudice, and without costs.