DAHLGREN v. PIERCE et al.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1920.)

No. 3291.

1. WILLS ☞702—BILL BY TESTAMENTARY TRUSTEE TO CONSTRUE WILL A SUP-PLEMENTAL AND ANCILLARY BILL.

A bill filed by a trustee, appointed by the court to administer a trust created by will, asking instructions and a construction of the will as far as necessary for that purpose, *held* properly denominated a supplemental and ancillary bill.

2. JUDGMENT ☞690—BENEFICIARY NOT REPRESENTED IN SUIT TO CONSTRUE WILL NOT BOUND THEREBY.

In a proceeding by a testamentary trustee appointed by the court for instructions, one previously recognized as a beneficiary, but not made a party, is not so represented as to be bound by a decree so construing the will as to place him in a class by himself and deny him the rights of a beneficiary.

3. COURTS ☞343—VIRTUAL DEFENDANT MAY BE BROUGHT IN WHERE PROCEED-ING IS IN EFFECT AN ADVERSARY PROCEEDING IN REM.

Where the property of a testamentary trust estate is in custody and control of a federal court, a proceeding by the trustee for construction of the will on a claim by certain heirs that another should be excluded as beneficiary is in effect an adversary proceeding in rem, and the court may bring in the virtual defendant under Judicial Code, § 57 (Comp. St. § 1039).

4. APPEARANCE ☞9(1)—GENERAL OR SPECIAL APPEARANCE ONE OF INTENT.

The question of general appearance is one of intent, actual or implied, and where the whole purpose of a defendant's application to the court is to set aside an order, because made without personal jurisdiction over him, the conduct which will make the motion unavailing and destroy its basis must be clear and unequivocal.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Supplemental and ancillary bill by Ulrica D. Pierce, trustee under the will of Samuel F. Vinton, deceased, against John V. Dahlgren, Jr., and others. From an order of the District Court, John V. Dahlgren, Jr., appeals. Reversed and remanded.

Samuel F. Vinton died in 1862, a resident of Washington, D. C., but leaving an estate consisting largely of real estate in Ohio. From this he constituted a trust, which was to continue until a time which has not yet arrived. Provisions were made for the annual distribution of the income, and eventual distribution of the principal, among the beneficiaries respectively named. The trustee named in the will died, and thereby that clause of the will became active which provided that, in such event, a successor trustee should be appointed by the proper court. Accordingly, a bill was filed in the court below, showing jurisdiction by reason of diverse citizenship, and praying that the court appoint a successor trustee, and for such other relief as might be appropriate. Thereupon, and in 1864, the court took jurisdiction of the cause and appointed a trustee. Upon death or resignation, successor trustees have been from time to time appointed ever since. Reports and accountings were filed by the trustee annually, or at frequent intervals, until about 1910, and, upon the filing of each report an order of confirmation was entered. In 1910 a question arose as to whether certain coal royalties should be credited to income or principal. This question was presented to the court below by petition of the trustee, all the parties interested were heard, and the court determined it to be income and directed distribution accordingly.

One of the beneficiaries entitled to income, John V. Dahlgren, died in 1899, leaving one child, John V. Dahlgren, Jr., then about 7 years old. The share of income to which John V. Dahlgren, Sr., had been entitled was continuously thereafter paid by the trustees to the guardian for the child, and, upon the distribution of the coal royalties, in 1910, it was expressly directed that the father's share should be paid to the son. Thereafter further annual reports were filed and confirmed, showing all disbursements, including these payments to the son, as they continued from year to year. In 1913 it seems to have been first suggested that the terms of the will were such that, upon the death of John V. Dahlgren, Sr., his son did not succeed to his interest in the income, but that this share of the income became payable to the surviving members of the class; and accordingly the claim was made that all the payments of income to the guardian had been unauthorized by the will and should be refunded to the trustee.

Pursuant to this theory, the then trustee, Ulrica D. Pierce, in 1913, filed in the court below what she called a supplementary and ancillary bill. In this she set out all the proceedings which had been had in the original case during the nearly 50 years throughout which the court had been exercising jurisdiction over the trust, and alleged that the question of construction of the will, above stated, had arisen. She made parties defendant to this supplemental bill all living persons interested in the estate, and, among others, John V. Dahlgren, Jr., and his guardian, who was his uncle, Eric B. Dahlgren, and who was also interested, personally, as one of the beneficiaries, whose income would be increased if the objection to the payments to Dahlgren, Jr., were sustained. She prayed a construction of the will to determine especially whether Dahlgren, Jr., had been entitled and was now entitled to the income payments, and whether his guardian had received, on that account, payments which were not rightful, and she prayed a decree that, if such payments were found to have been wrongfully made, the guardian be ordered to repay the same to the trust estate. She also prayed, generally, for direction to her, as trustee, in the premises, and for general relief. The bill stated facts from which it appeared that Dahlgren, Jr., had become 21 years old shortly before the bill was filed; but it did not otherwise notice the existence if his majority.

All the parties named as defendants, except Dahlgren, Jr., entered their formal appearance to the suit, waived subpœna, and consented that the court exercise full jurisdiction for the purposes named in the supplemental bill. An order was also made, on January 30, 1914, by consent of the guardian, but

without notice to Dahlgren, Jr., that the fund belonging to the ward and in possession of the guardian, and which had accumulated from these payments, and which was in the immediate control of a Surrogate's Court in New York, be, by the guardian, paid into court in this cause.

Thereupon, Dahlgren, Jr., entered a motion to set aside this order. The motion is quoted at length in the margin.[1] Pending hearing of this motion, complainant filed an affidavit or petition showing that Dahlgren, Jr., "is not an inhabitant of the state of Ohio, and cannot be found within this district, and does not voluntarily appear herein," and procured an order, pursuant to section 57 of the Judicial Code (Comp. St. § 1039), directing that he should appear within the time fixed and that a copy of the order should be served upon him within the state of New York. This proceeding came to, nothing, because the copy of the order was not served within the time fixed, and, upon a later and separate motion by Dahlgren, Jr., this order for appearance was vacated.

It sufficiently appears that the argument before the District Judge of Dahlgren, Jr's., motion to vacate the order of January 30, 1914, was continued from time to time, and that the questions involved were presented to him several times; that, in the course of these discussions, it was suggested (by whom it does not appear) that the motion ought to be granted, not only for the reasons therein stated, but because, upon the face of the papers, it appeared, first, that the bill was not a supplemental bill, but rather an original bill, and did not disclose the diverse citizenship necessary to support jurisdiction; and, second, that the meritorious question had become res judicata by the previous proceedings in the cause. Thereupon counsel for Dahlgren, Jr., filed a written brief and argument directed to these two suggested questions.

Eventually, and by an opinion filed January 3, 1916, and adhered to in a later opinion and order, the District Judge held that neither the grounds set out in the original motion nor these additional grounds were sufficient to justify vacating the order; that certain subsequent events made the order ineffective, for which reason it should be and was vacated; but that, by presenting to the court the motion and relying upon the first and second additional grounds above stated, Dahlgren, Jr., had entered his general appearance.

Thereupon he filed a motion to dismiss the bill upon various grounds, some of which go to the jurisdiction of the court, and some to the merits of the controversy, and the first of which is "because the court never lawfully acquired jurisdiction over him." The introductory paragraph of this motion is quoted in the margin.[2] Upon this motion, the case was considered as if

[1] Now comes John V. Dahlgren, appearing specially for the purpose of this motion and for no other purpose, and not intending thereby to submit himself otherwise to the jurisdiction of this court, and moves the court to set aside the order entered herein on January 30, 1914, directing Eric B. Dahlgren, guardian of your petitioner, to deliver to the clerk of this court all funds in his hands and under his control derived as such guardian from the trustee of said Vinton trust estate.

As grounds for this motion, your petitioner says that prior to the entry of said order he was of full age; that said order was procured by and with the consent of said Eric B. Dahlgren, ex parte and without notice to your petitioner; that Eric B. Dahlgren claims personally an interest in said funds under the will of said Samuel F. Vinton, adverse to the interest and claim of your petitioner; that the funds in the hands of said Eric B. Dahlgren as guardian are in the state of New York, and that said Eric B. Dahlgren was appointed such guardian by the Surrogate's Court in and for New York county, in the state of New York; and that said funds and said Eric B. Dahlgren as such guardian are subject to the jurisdiction, direction and control of said Surrogate's Court.

[2] John V. Dahlgren, not intending to enter his appearance to the supplemental and ancillary bill, or to waive his objection to the jurisdiction of the court over him and to its finding, contained in its order entered on May 24, 1917, that he has entered his appearance herein and is subject to the jurisdiction of the court, and renewing his exception to said finding and protesting

upon final hearing. Dahlgren's motion to dismiss was overruled and a decree was entered determining that the payments to the guardian had been wrongfully made, and directing that he repay the same to the trustee for a new distribution, to the exclusion of Dahlgren, Jr., and continuing, for later hearing, all questions as to the final distribution of the body of the trust estate. Dahlgren, Jr., appealed to this court. His assignments of error allege lack of any sufficient jurisdiction over him by the court below, and then, upon condition that this court decides to overrule such assignments, he further assigns error upon meritorious questions.

Lawrence Maxwell, of Cincinnati, Ohio, for appellant.

J. Warren Keifer, of Springfield, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and WESTENHAVER, District Judge.

PER CURIAM. [1] 1. The bill filed by the trustee was properly enough denominated "supplemental and ancillary," and the trustee thereby rightfully called upon the court below to give instructions to her as to her current duties and to construe the will as far as necessary for that purpose. The estate and the trust were rightfully brought into that court in the first instance,[3] and it had never lost jurisdiction for the due administration of the trust. The right to give instructions to the trustee is inherent in such situation, and power to construe the will must underlie the right to give instructions. We do not understand these propositions to be seriously questioned, except that it is insisted that in so far as the bill sought a decree for the return of what had been paid to Dahlgren, Jr., it went beyond a truly ancillary character and became original. This insistence is not now important.

[2] 2. Cases may be conceived where the will might be construed and a decree made which would be effective to protect the trustees, and yet where it would not be necessary to make defendant every person claiming to be a beneficiary. Here Dahlgren, Jr., has been, for 15 years and by all parties concerned, recognized as a beneficiary. The doubtful question of construction affects him, and him alone, upon one side of the controversy. Not only is he of full age, but there is no one else in his specific class, and there may never be. The other

against the same, and only because the court has ordered him to answer the supplemental and ancillary bill of Ulrica Dahlgren Pierce, trustee, and in order to prevent a judgment by default, moves the court to set aside said finding of May 24, 1917, and the order requiring him to answer the supplemental and ancillary bill, or, if that be refused, then and only in that event to dismiss said supplemental and ancillary bill, and particularly so much thereof as seeks to recover moneys heretofore paid to Eric B. Dahlgren, his guardian, while he was a minor, upon the following grounds:

[3]The will, attached as an exhibit to the original bill, provided that upon the death of the trustee named a new trustee should be appointed by "the court whose jurisdiction and duty it was to see that the trusts herein created are carried into execution." It then provided that the trustee should act continuously under the direction of "said court," making reports to it, and clearly demonstrated the testator's intent that a court of equity should take control and administration of the trust. The original bill alleges that this "large trust estate" has been, by the trustee's death, "left without care or control," and prays the appointment of a new trustee to act under the will, and for general relief.

parties to the case, who constitute with him the general class of heirs at law, all have adverse interests, which alone would prevent the application of the theory of virtual representation. Pugh v. Frierson (C. C. A. 6) 221 Fed. 513, 527, 137 C. C. A. 223. A decree which would not bind him would be wholly ineffective; and that he would not be bound, unless made a defendant, is, under these circumstances, entirely plain. 20 R. C. L. 703, tit. "Parties," § 45.

[3] 3. This trust estate consisted of real and personal property, all of which was constructively, and much of which was actually, within the Southern district of Ohio, not to say that it was in the custody of the court. A suit to determine the rights of the parties therein is, in many aspects, a suit in rem. This suit was brought to enforce the claim of some of the parties to the whole of such property, and to remove the cloud upon the title thereto caused by the adverse claim of Dahlgren, Jr. It is within the very words, as well as within the substance, of section 57. That the immediate question pertains only to income does not make the case less clear. The income on hand when the supplementary bill was filed and that which has since accumulated is in the custody of the court through its trustee; upon a true alignment of the parties, Dahlgren, Jr., is sole defendant, and the others (presently interested) are all plaintiffs; they claim the whole of the income, and seek to enforce that claim by this suit; he claims an interest in it, and this suit is brought to declare his claim unfounded. We do not find any precedent especially instructive; but the cases where the contrary conclusion was reached are so plainly distinguishable that it is not necessary to point out the difference. See, e. g., Ladew v. Tennessee Co., 218 U. S. 357, 367, 31 Sup. Ct. 81, 54 L. Ed. 1069; Chase v. Wetzlar, 225 U. S. 79, 89, 32 Sup. Ct. 659, 56 L. Ed. 990; Fayerweather v. Ritch (C. C.) 89 Fed. 385; York Bank v. Abbott (C. C.) 139 Fed. 988, 993, and cases cited. See, also, U. S. v. So. Pac. (C. C.) 63 Fed. 481, and cases cited. We conclude that the court below had ample power to bring in Dahlgren, Jr., under section 57, and subject him to a decree declaring whether or not he is entitled to share in the funds for current distribution. Whether this power would extend to a decree for the repayment of past payments we do not decide.

[4] 4. His conduct in the case did not amount to a waiver of the objection to personal jurisdiction nor to a general appearance. It is true that if, before his challenge to the personal jurisdiction has been overruled, a defendant questions the jurisdiction of the court over the subject-matter, or tenders an issue upon any meritorious question, he has often been considered thereby to waive any objection to jurisdiction over his person; but the facts of this case do not support the application of this rule. The motion to vacate, as it was filed and entered, was expressly declared to be a special appearance for the purposes of the motion only, and did not rest upon any grounds excepting those which fairly pertained to the personal jurisdiction over Dahlgren rather than jurisdiction of the subject-matter. The allegation that petitioner was of full age and that his guardian was adversely interested, and so incompetent to consent, were only important to de-

stroy the prima facie consent which had been given. They operate, therefore, merely to amplify and support the allegation that the order had been ex parte.

The further allegation that the fund sought to be reached is subject to the jurisdiction of the Surrogate's Court in New York carries something of the color of a challenge to jurisdiction over the subject-matter; but we think it is only color. It is collateral to the substantial fact that the funds belong to the petitioner and are situated in the foreign district, where he resides, and that the court cannot make an order disposing of them without service of process upon, or other notice to, the nonresident owner. The motion is analogous to one to quash process which has been personally served, but irregularly, and wholly analogous to a motion to vacate an attachment which has been wrongly issued. To say that by this motion Dahlgren, as petitioner, had in effect entered his general appearance, would be to give it a result so contrary to its obvious and expressed intention that the conclusion would not be supported by any well-considered precedent which has been brought to our attention.

We come, then, to the result of the conduct of petitioner's counsel in arguing, also, that the motion to vacate ought to be granted, because the bill was not good and should be dismissed. If a motion to dismiss had been made upon these grounds before the motion to vacate had been passed upon, it might well have been a waiver; but it will be noticed that petitioner had then never asked any relief, except that the motion to vacate should be granted. The written brief and argument, which the District Judge found to be equivalent to a general appearance, concluded: "We respectfully submit that the order should be set aside." There was then no other issue, either of law or of fact.

The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application to the court is to set aside an order because it has been made without personal jurisdiction over him, the conduct which will make the motion unavailing and destroy its basis must be clear and unequivocal. It is a matter of everyday experience that, upon the argument of a challenge to the personal jurisdiction, questions upon the merits will collaterally arise. Not uncommonly the court thinks that it may not be necessary to decide a difficult question of personal jurisdiction, because there is no good case presented upon the merits, and the court will make the suggestion and desire to hear counsel upon it. Whether argument of this kind comes in response to the court's suggestion, or comes voluntarily from defendant's counsel by way of good measure in giving reasons why the actual motion should be granted, we think such argument should not be held, of itself and necessarily, a waiver of the objection which is being so carefully preserved; and, unless there is a rule of law imperatively declaring such a waiver, it ought not to be found from the circumstances of this case.

We find no persuasive holding that such a waiver must be inferred, and we refer to some of the cases cited by appellee in support of such an inference, merely to show how far they are from having such supposed effect. In Jones v. Andrews, 10 Wall. 327, 19 L. Ed. 935, a de-

murrer for want of equity was joined with the motion to dismiss for lack of personal jurisdiction. In Western Co. v. Butte Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101, substantially the same situation existed. In Long v. Newhouse, 57 Ohio St. 348, 49 N. E. 79, the defendant had asked action to reform the pleadings before he raised the personal question. On the other hand, our conclusion that a waiver ought not to be inferred is illustrated by what is said in Citizens' Co. v. Ill. Cent. Co., 205 U. S. 46, 59, 27 Sup. Ct. 425, 51 L. Ed. 703. See, also, our recent decision in Board v. Keil, 259 Fed. 76, 81, —— C. C. A. ——.

5. Although it must follow that there was not sufficient jurisdiction over Dahlgren, Jr., to support the further proceedings which were taken, and that the final decree must be vacated, yet it is apparent that the necessary personal jurisdiction can easily be acquired, and probably will be, and that in this way the ultimate question of construction of the will as to income may again be presented, so that it must be decided. In this situation, we have been inclined to consider this question now ourselves, with a view to aid in ending the litigation; but we conclude that it is not best to do so, in the present state of the record. It is enough to say that our disposition of the case is not to be taken as implying approval of the conclusion reached below, and that the subject should receive, as it doubtless will, further careful thought.

The decree is reversed, and the case remanded for further proceedings in accordance with this opinion.