## ROBERTSON v. CARSON.

A. and B., executors in South Carolina, and authorized by their testator to sell all his real and personal estate, and to pay the proceeds to the testator's sons, sold the lands to C. on mortgage. C. wishing to pay the mortgage, A. received the amount of it from him in notes of the so-called "Confederate States," surrendered the instrument and entered satisfaction upon it. C. sold the property (whether with warranty or without did not appear) to D. E. & Co., a mercantile firm, composed of the said D. and E. and three other persons, including F.; the deed, however, being made to D. and E. individually, upon such uses as they should appoint, and until they did appoint to the use of the whole five partners, according to their interests in the firm. F. afterwards retired from the firm, transferring, in consideration of a sum of money to be paid, his interest in the firm to his remaining partners; and D. and E., in order to secure the payment to F. of the sum of money, appointing the land to the use of him, F.

The executors sold the personal estate also to C., who had bought the real; this sale of the personal being on credit, and X. becoming C.'s surety to the executors for payment of the price

In August, 1866—the notes of the "Confederate States" being now wholly worthless—the sons of the testator (or rather their mother, to whom they had transferred all their interests in their father's estate) filed a bill (charging fraud and conspiracy) against the executors (A. and B.), against D. (one of the trustees to whom C. had conveyed in trust for the firm), and against X. (the surety of C. in the matter of the personal property)—*nobody else being brought in*—to charge the executors with all moneys received by them, to reinstate and establish the mortgage given by C., and to hold X. liable as surety in the matter of the price of the personal property.

*Held*, that the bill could not be sustained, that C. (the purchaser from the executors), and E. (the co-trustee with D.), were indispensable parties, and that if it was intended to conclude F. (in case he did not get his money from his partners) from proceeding on the mortgage given to him to secure its payment and raising anew the question of the validity of the sale of the real estate to C., and of that by him to D. and E., he was to be made a party also.

APPEAL from the Circuit Court for the District of South Carolina; the case being thus:

William Carson, of South Carolina, died in August, 1856, somewhat indebted, but possessed of considerable real and personal estate, including a plantation called Dean Hall, and leaving a widow, Caroline, and two minor sons, William and James. By his will he appointed two persons, named Robertson and Blacklock, his executors, and directed all his estate to be sold by them on such terms as they should deem judicious; and the proceeds, after payment of his debts, to be divided into three parts, all "to be *held* in trust" by his executors; the interest of one-third to be paid to his widow, and the interest of the other two to be devoted to the support of his sons till they came of age; and the principal to be then paid to them.

The executors, soon after his death and near the close of the year 1856, sold Dean Hall to one Elias Nonus Ball, most of the purchase-money being in the form of a purchase-money mortgage reserved to them as executors. Ball, in 1863, the rebellion being now in full action, agreed to sell it to a firm trading under the name of Hyatt, McBurney & Co., and which was composed of five persons, to wit, Hyatt and McBurney, aforesaid, and three other persons named, respectively, Gillespie, Hazelton, and McGann. Hyatt, McBurney & Co. paid the purchase-money in "Confederate States" notes, the usual currency during the rebellion of South Carolina. With this Ball paid off his bonds to the executors, and Robertson, one of them, surrendered his bonds and entered satisfaction on the mortgage. Ball then conveyed the plantation (by what kind of deed as respected warranty did not appear), to McBurney and Gil-

lespie, two partners, as already said, of Hyatt, McBurney & Co., " to such uses as they or the survivors of them should appoint, and until such appointment to the use of the said Hyatt, Hazelton, McGann, McBurney, and Gillespie, partners, trading as Hyatt, McBurney & Co., according to their respective interests in the partnership."

Hyatt, some time after, by deed, bearing date 8th May, 1863, released his interest in the plantation, and on the last-named day, Hyatt retiring from the partnership, McBurney and Gillespie appointed the plantation to his use to secure a bond of the remaining partners to him for $40,000, given for the purchase of his interest in the partnership. *Hyatt was and now is a citizen of New York.* Gillespie so also, apparently. Hazelton was domiciled at Liverpool, England; and McGann then, as now, was a citizen of South Carolina. Ball, the purchaser, was a citizen of New Jersey.

The executors, at the time they sold the plantation to Ball, sold to him also certain personal property. This was sold on credit, and one *W. J.* Ball became jointly bound with the said E. N. Ball, and as his surety for the payment of the price of it.

McBurney and Gillespie remained in possession of Dean Hall until August, 1866, when the two sons of Carson having reached their majority, and having transferred all their interest in their father's estate to their mother, his widow, she, describing herself as a citizen of New York, filed a bill in the court below against the executors (Robertson and Blacklock), against E. N. Ball, W. J. Ball, McBurney, and the two sons Carson; these two being made parties apparently for mere form. But from a fear perhaps of ousting the jurisdiction of the Circuit Court, if it made them parties, the bill did not attempt to make either Hyatt, who, as already said, like the complainant, was a citizen of the State of New York, Gillespie, Hazelton, or McGann (the four persons who, with McBurney, constituted the firm of Hyatt & McBurney, and for whose use along with that of McBurney, the plantation had been conveyed when conveyed to Hyatt & McBurney), parties to the bill. And of those whom it sought to make

parties, only Robertson and Blacklock (the executors), and McBurney and *W. J.* Ball were served. *The purchaser, Elias Nonus Ball, was not served.* [The same was true as to the sons Carson, though these last were, as already said, added for form only, and the omission to serve them was obviously unimportant.]

The purpose of the bill was:

As respected the executors, to make them account in good money, for the proceeds of the sales which they had made, if the sales should stand:

As respected the defendant McBurney, to set aside his purchase and re-establish the mortgage given by E. N. Ball to the executors, upon the ground that he, McBurney, paid no valuable consideration for his purchase; that the pretended payment of his bond by Ball, the mortgagor and purchaser from the executors, and the release and satisfaction of the mortgage was procured by him without valuable consideration, and was a breach of their trust by the executors. That McBurney aided and procured the executors to commit the breach of trust, and with full knowledge of the same, became possessed of Dean Hall without any valuable consideration passing from him to Ball, or from Ball to the executors, and that he should, in equity, be declared to hold the premises for the benefit of the complainant:

And as respected *W. J.* Ball, to make him respond as surety for the debt of E. N. Ball, incurred in the purchase of the personal property.

The executors, McBurney, and W. J. Ball, answered, setting up:

1st. *Matter of form.* That Hyatt, Hazelton, Gillespie, McGann, and Elias Nonus Ball were indispensable parties to the bill; the answer of W. J. Ball alleging in addition, and in regard to the sale of the personal property bought by *E. N.* Ball, that *he,* the respondent, was but a surety, and that the said E. N. Ball was the principal debtor, and the person alone acquainted with the facts of the case.

2d. *Merits.* That the payments were made in money that was universally current in the South, money which had

value, and which was received on deposit in all the banks of South Carolina at the time; that in fact the payments were made in checks on the Bank of South Carolina. It alleged further, that with this same money received the executors had paid off the debts of their testator.

The court below (Chase, C. J., presiding) with some hesitation overruled the objection as to parties,* observing that "it would be a positive wrong for the Circuit Court to turn from its doors a suitor in another State, seeking a remedy against citizens in this State, and thus deny to her, upon a doubtful question in reference to parties, a right secured to her by the Constitution;" and that the court would "strain a point in favor of the constitutional right of citizens of the several States to sue the citizens of other States in the courts of the United States."

On the merits it decreed that the surrender of the bonds of E. N. Ball by Robertson, the executor, and the satisfaction of the mortgage of Dean Hall, were done in breach of his duty as trustee, and were null and void; that the obligations were not discharged; that the mortgage of Dean Hall was a valid and subsisting mortgage, and that the complainant was entitled to the bonds and to enforce the mortgage as a security for the same. And after finding a certain sum due as principal of the mortgage, it decided that if the debt and interest were not paid by a day named, the plantation should be sold by the marshal under foreclosure.

On the 15th of June, 1872, that is to say, *after* the date of filing the bill in this case, and indeed after the decree made, Congress, by "*An act to further the administration of justice*," enacted as follows:†

"SECTION 13. That when, in any suit in equity . . . to enforce any legal or equitable lien or claim against real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, . . . it shall be lawful for the court to make an order directing such absent defendant to appear, plead,

---

* 2 American Law Times Reports, 116.        † 17 Stat. at Large, 198

answer, or demur, to the complainant's bill at a certain day therein to be designated; which order shall be served on such absent defendant, if practicable, wherever found; or, where such personal service is not practicable, such order shall be published in such manner as the court shall direct, and in case such absent defendant shall not appear, plead, answer, or demur, within the time so limited, . . . it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district," &c.

*Mr. Edward McCready and Mr. Edward McCready, Jr., for the appellants,* charging multifariousness and great disorder on the bill, argued that there was plain error in the action of the court below:

1. *In overruling the objection as to parties.* They contended that the objection under the aspect of one of form was really one of substance, and of great substance; the property and rights and character of Elias Nonus Ball being certainly involved, and none the less certainly involved or the less completely because they were not directly involved; that if the complainant succeeded in this suit *he,* E. N. Ball, who was the principal debtor in the bond for the personal property, would have to pay what his surety had paid for him; while as to the real estate, since fraud and collusion were charged, to which he was averred to be a party, he would have to pay the amount whether his deed to McBurney and Gillespie contained a warranty or not.

Then, the conveyance to McBurney and Gillespie, was to them both in trust; to Gillespie as much as to the other. McBurney was brought in by the bill and Gillespie was left out. Why was this done? Being co-trustees, one was as important as the other. If McBurney had died, the legal estate would have survived to Gillespie. In truth, to be in a form perfectly regular, not only the trustees but the *cestuis que trust,* Hazelton and McGann, should have been made parties. On the payment of Hyatt's claim against the four partners, the interest of all four in the estate would come into action.

But Hyatt especially ought to be made a party.   He had released his interest in the land immediately after the purchase, and the trustees had appointed a use of Dean Hall to secure the bond of the other partners, given to secure the price of the purchase of his interest in the firm.

The copartnership of which Hyatt was a member expired on the 31st of May, 1863, and he then sold his interest in the firm to the .other partners and retired from business. His interest in the plantation was only by the mortgage upon it, which he held under the appointment from the trustees, to secure the bond of his late copartners.

As the record now stood, no decree upon it in favor of the complainant could end the litigation.   Hyatt was free to bring his bill to foreclose his mortgage of Dean Hall, and Hazelton, Gillespie, and McGann free to bring their action in ejectment against any person who might purchase at the sale prayed for.

The case was not one where the doctrine of one partner representing the firm applies.   Here was a conveyance to *trustees;* not to the firm, but to two individuals.

2. *In regard to the merits.*  The counsel argued that McBurney was a purchaser for value; that the case showed no fraud, and that the whole transaction was in the then ordinary course of business in the South, and that the bills of the Confederate States were not then valueless—far from it; and that the payments were protected by the cases in this court of *Thorington* v. *Smith,** *Delmas* v. *Insurance Company,*† and *Planters' Bank* v. *Union Bank.*‡

*Messrs. James Lowndes and W. W. Boyce, with whom was Mr. Caleb Cushing, for the appellees:*

1. *As to parties.*   The Federal courts, sitting in equity, are exceptionally liberal in dispensing with parties, and for two obvious reasons.   The first is the limitation upon their jurisdiction by the citizenship of parties; the other is the limitation upon their jurisdiction by their inability (until the

---

* 8 Wallace, 1.          † 14 Id. 661.          ‡ 16 Id. 483.

statute of 1872) of bringing in parties by publication. The narrowing effect upon their jurisdiction of these limitations has led them to enlarge the rule as to parties.*

In pursuance of this liberal policy, the courts have acted upon this principle, viz., that where a party, not before the court, is not an inhabitant of or found within the district where the suit is brought, the court will proceed without such party, unless he is an *indispensable* party, or *one whose rights are necessarily affected by the decree.*

There are three classes of parties: 1. Formal parties. 2. Necessary or convenient parties. 3. Indispensable parties. The Federal courts dispense with parties of the first two classes.

The parties dispensed with in *Payne* v. *Hook*† and in *Traders' Bank* v. *Campbell,*‡ were directly affected in their interests by the decrees; and they were in a stronger sense "necessary parties" than those whose absence is objected to in this case.

To apply these principles to the case, Ball passed all his interest in Dean Hall to McBurney and Gillespie by his deed. Ball's presence would be convenient to the defendants, because they might make their claim over against him. But he is only a convenient party, and his convenience is to the defendants. A stronger case than this is that of a mortgagor making a second mortgage; but by the statutes in South Carolina he need not be made a party.§ The case of *Caldwell* v. *Carrington,*‖ was a case similar to this.

Gillespie, in his character of co-trustee with McBurney, is not an indispensable party. The other trustee, McBurney, is before the court, and fully represents the trust estate. If Gillespie came in, he would have nothing to do but to sign McBurney's answer. An absent co-trustee is not an indispensable party.¶

* Mallow *v.* Hinde, 12 Wheaton, 198; Eberly *v.* Moore, 24 Howard, 158.
† 7 Wallace, 431.                ‡ 14 Id. 94.
§ General Statutes, 389.         ‖ 9 Peters, 86.
¶ West *v.* Randall, 2 Mason, 191.

Hyatt, McGann, Hazelton, and Gillespie, in their character of copartners of Hyatt, McBurney & Co., are not indispensable parties. They are *cestuis que trust*, under the conveyance to McBurney and Gillespie, and their trustee, McBurney; who is before the court, fully represents them. By the forty-ninth rule in equity, the trustee under a devise of realty is the proper party to defend a suit affecting it. This case is an analogous one. It is decided that a copartner is not an indispensable party; a partner before the court being taken to represent sufficiently the others.* At law, service on one copartner is sufficient in South Carolina.† Suits like this are within the reason of that rule. The property is realty; a fact which makes the case stronger than *Payne* v. *Hook*, or than *Traders' Bank* v. *Campbell.*

McBurney and Gillespie exercised their power of appointment by mortgaging Dean Hall to Hyatt. Is, then, Hyatt, as mortgagee, an indispensable party? The mortgage was simply a copartnership transaction. It amounted, in fact, to nothing more than setting aside in severalty Hyatt's share in the assets of Hyatt, McBurney & Co. The equitable lien which Hyatt had on the copartnership assets, for his share on an account with his copartners, was as sufficient a security to him as the mortgage. The mortgage was idle, for Hyatt's lien existed antecedently to it and independently of it. There was no new consideration given for the mortgage by Hyatt, and he is therefore not, by virtue of the mortgage, a purchaser for value. It would be great hardship to hold him to be an indispensable party, by reason of a supposed deed which did not materially change his rights.

There is another principle observed by the Federal courts of equity, viz., that where the joinder of a party will oust the court of its jurisdiction, it will go very far in dispensing with parties.‡

It is on this principle that the Chief Justice rested his decree overruling the objection to want of parties in this case.

---

* West *v.* Randall, 2 Mason, 191.          † 7 Statutes, 281.
‡ West *v.* Randall, 2 Mason, 196; Payne *v.* Hook, 7 Wallace, 431.

Hyatt and Gillespie being both citizens of New York, where the complainant, Mrs. Carson, also has her domicile, to order them to be made parties is to send the complainant out of the Federal courts. To send her out of those courts is, in consequence of the decisions of the State courts of South Carolina on this class of questions, to take away from her all redress.

Since the decree was rendered in this case, an act of Congress* has provided that absent defendants may be brought into the United States courts by publication. If this court holds that this act so enlarges the jurisdiction of the Federal courts as to allow the absent parties in this case to be brought in, then the rule laid down in *Pugh* v. *McCormick*† will apply, viz., that this court will not send back a case when, by reason of a new statute, the decree appealed from has ceased to be error.

To sustain the decree is not to adjudicate the rights of any one in his absence. Its effect would only be to place the appellee in possession of lands as against those now actually in possession. The absent claimants are in noways concluded.

2. *The question of merits* was argued fully; the counsel contending, among other things, that the executors (after the sale converted into trustees) were bound to *hold* the proceeds of sale; that the Confederate States had never attempted to make their notes a legal tender; and that, as frequently decided, of late, in South Carolina, the so-called payment was no payment at all.

Mr. Justice SWAYNE delivered the opinion of the court.

We have not found it necessary to come to any conclusion as to the merits of the case. Aside from that subject, there is an insuperable difficulty arising from the want of parties. A brief statement will be sufficient to show the foundation upon which this objection rests.

William Carson by his will, after certain other bequests, directed his executors, Robertson and Blacklock, to sell all

---

* 17 Stat. at Large, 198, § 13.          † 14 Wallace, 361.

his real and personal property, and after paying his just debts, to hold the residue of the proceeds upon the trusts prescribed, for his widow, Caroline Carson, and his two children, William and James Carson. The executors were authorized to invest and reinvest as they should deem best. They sold a plantation known as Dean Hall, to Elias N. Ball, and took his bonds for the purchase-money, secured by a mortgage upon the premises. They sold also a large amount of personal property to the same Elias N. Ball, and took his bonds for the proceeds, with W. J. Ball as his surety. Elias N. Ball sold the Dean Hall property to Hyatt, McBurney & Co. The firm consisted of Hyatt, McBurney, Gillespie, Hazelton, and McGann. The property was conveyed to McBurney and Gillespie, to be held by them for themselves and for such uses as they should appoint for the benefit of the other members of the firm. They paid Ball in Confederate money, and he paid his debt. to the estate of Carson in the same medium. Robertson, one of the executors, thereupon gave up his bonds and released the mortgage. The legatees, William and James Carson, after reaching the age of majority, assigned all their rights under the will to the complainant, who is the widow of the testator. The bill charges that the transaction between Hyatt, McBurney & Co., E. N. Ball, and Robertson, the executor, was fraudulent and void. It seeks to charge the Dean Hall property with the amount of the debt secured by the mortgage, and to call Elias N. Ball and his surety to account upon their obligations for the proceeds of the personal property. The parties defendant made by the bill are the executors, Robertson and Blacklock, and McBurney, Elias N. and W. J. Ball, and William and James Carson. Process was returned not found, as to William and James Carson and Elias N. Ball. The two former having assigned all their rights and interest to everything in controversy, it was not necessary to make them parties. Nothing more need be said in regard to them.* But as the pleadings stand, the

---

* Garrett *v.* Puckett, 15 Indiana, 485; Whitney *v.* McKinney, 7 Johnson's Chancery, 147.

presence of Elias N. Ball was necessary in both aspects of the case.

First. As to the personal property:

The bill does not aver that he is insolvent, and gives no reason why he should not. or cannot be brought before the court. The answer of W. J. Ball takes the objection of his absence and alleges that he represents the debt to be paid. The surety is entitled to have him present that he may assist in making this defence, that he may assist in taking the account of what is due if the defence fail, that the decree in that event may be primarily against him for payment, and that the amount may be conclusively fixed for which he will be liable over to the surety, if the latter should be compelled to pay the debt.*

Secondly. As to the real estate:

The bill charges fraud and conspiracy, and that he was a party to them. It denies that the mortgage was paid, alleges that the bonds are still in force, avers that the release was a nullity, and seeks to enforce the mortgage.

If these allegations are maintained, the whole amount of the debt will be rehabilitated against him. He is entitled to an opportunity to repel these imputations and to protect himself if he can do so. His vendees are entitled to his aid. His defence is their defence. It does not appear whether his deed to McBurney and Gillespie contains the usual covenants of title. If so, he would be liable over to his grantees in the event of the mortgage being enforced. This would be an additional reason for his being a party when the case is disposed of.

The general rule is that a mortgagor who has parted with his interest in the mortgaged premises need not be a party in a suit for foreclosure, unless he has warranted the title to his assignee. Whether there were such warranty by Ball,

---

* Story's Equity Pleadings, § 169; Madox *v.* Jackson, 3 Atkyns, 406; Angerstein *v.* Clark, 2 Dickens, 738; Cockburn *v.* Thompson, 16 Vesey, 326; Bland *v.* Winter, 1 Simons & Stuart, 246.

or not, we hold him to be an indispensable party by reason of the circumstances of the case.*

Gillespie was one of the grantees in the deed of E. N. Ball. The legal title was vested by that instrument in him and McBurney, and there is no averment that they do not yet hold it. This renders Gillespie an indispensable party.†

It appears that Hyatt has released his interest to his co-partners, but it also appears that they have given him a mortgage upon the premises to secure the payment of $40,000. If he shall not be made a party, and the complainant shall be successful, his rights will not be affected by the decree. In such case he can file a new and independent bill and renew the litigation as to all the questions touching the prior mortgage which are involved in this controversy.‡

The complainant has the option to make him a party or to proceed without him and take the hazard of the consequences.

The statute of South Carolina referred to by the counsel for the appellee, does not affect the case.

The act of Congress of June 1, 1872, was passed several years after this bill was filed. The thirteenth section has, therefore, no application to the question of parties in this litigation.

It is competent for a party to make a change of domicile for the purpose of giving jurisdiction to the Federal courts where it could not otherwise exist. With that privilege and the help of this section, there can hardly in any case be an

---

* Calvert on Parties, 179; Milroy *v.* Stockwell, 1 Carter, 35; Haines *v.* Beach, 3 Johnson's Chancery, 459; Worthington *v.* Lee, 2 Bland, 682; Ducker *v.* Belt, 3 Maryland Chancery, 13; Hallock *v.* Smith, 4 Johnson's Chancery, 649; Bigelow *v.* Bush, 6 Paige, 343; Drury *v.* Clark, 16 Howard's Practice Reports, 424.

† Watson *v.* Spence, 20 Wendell, 260; Story's Equity Pleading, 192, 197; Barber on Parties, 463, 491; Shaw *v.* Hoadley, 8 Blackford, 165; Betts *v.* Starr, 5 Connecticut, 551.

‡ Haines *v.* Beach, 3 Johnson's Chancery, 459; Ensworth *v.* Lambert, 4 Id. 605; Judson *v.* Emanuel, 1 Alabama N. S. 598; Brainard *v.* Cooper, 10 New York, 356; Story's Equity Pleadings, ⸹ 192.

irremediable difficulty as to jurisdiction, however diversified the residence of those necessary to be made defendants.

This record is in a singularly defective and confused condition. The allegations in the bill lack clearness and precision. This has perhaps arisen from the want of full and accurate information until the coming in of the answers. There are important averments on both sides unsupported by evidence. Important papers are referred to, but copies are not given, and there is no proof of their contents. There are many matters of detail of no moment to the rights of the parties which should be expunged. If there were no defect of parties, we should have great difficulty in disposing of the case upon the pleadings and proofs before us. If the case shall be brought here again, these objections, it is to be hoped, will in the meantime be obviated.

DECREE REVERSED, and the cause remanded, with directions to proceed

IN CONFORMITY TO THIS OPINION.