SIMPSON v. PHILLIPSDALE PAPER MILL CO.

(District Court, D. Massachusetts. January 5, 1915.)

No. 544.

1. Courts ⊂⇒307—United States Courts—Jurisdiction—Diversity of Citizenship.

An unmarried man, having an office and lodgings in Boston, gave up his lodgings there and removed his personal effects to Providence, where he engaged lodgings, for the express purpose of obtaining a residence there, in order that he might sue a Massachusetts corporation in the federal courts, and with the intention of doing everything necessary for that purpose. He retained his office in Boston, and, though having no regular lodgings there, spent more nights in Boston than in Providence, and spent comparatively little time in Providence. His work required him to travel a considerable part of his time, and he customarily register- ed as from Boston. He had his name taken off the Boston voting list, and asked to have it placed on the Providence voting list, but learned that a personal application was necessary, which he did not make. He received all his mail at his Boston office, and paid therefrom the bills for his Providence lodgings. *Held*, that while, had he in fact changed his domicile, his reason for doing so would be immaterial, the facts show- ed that there was no actual change of domicile, and that he was still a resident of Massachusetts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. ⊂⇒307.]

2. Courts ⊂⇒323—United States Courts—Jurisdiction—Diversity of Citi- zenship—Evidence.

Judicial Code (Act March 3, 1911, c. 231) § 37, 36 Stat. 1098 (Comp. St. 1913, § 1019), provides that if, in any suit commenced in a District Court, it shall appear to the satisfaction of such court that such suit does not really and substantially involve a dispute or controversy properly with- in its jurisdiction, it shall dismiss the suit. In an action in which di- versity of citizenship was the only ground of jurisdiction relied upon, a plea in abatement denying plaintiff's claimed residence in another state was seasonably filed. *Held* that, assuming that the burden of proof is on the party denying jurisdiction, defendant was only required to estab- lish such lack of jurisdiction by a fair preponderance of the evidence, and if a requested ruling that the burden was on defendant to convince the court to a legal certainty of its lack of jurisdiction required any- thing more than a fair preponderance of the evidence, it would not be given.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 885, 886; Dec. Dig. ⊂⇒323.]

At Law. Action by Erastus R. Simpson against the Phillipsdale. Paper Mill Company. On plea in abatement. Plea adjudged good.

Whipple, Sears & Ogden, of Boston, Mass., for plaintiff.
Sawyer, Hardy & Stone, of Boston, Mass., for defendant.

MORTON, District Judge. This is an action at law, originally brought by the plaintiff in this court by a writ dated May 18, 1914. The only ground on which it is contended that this court has jurisdic- tion of the controversy is an alleged diversity of citizenship. In the writ the plaintiff is described as "of Providence, in the state of Rhode

Island," and the defendant as a Massachusetts corporation. If these allegations are true, jurisdiction is established. The defendant has filed a plea in abatement, alleging that in fact the plaintiff is not a citizen of Rhode Island, but of Massachusetts, that there is no diversity of citizenship, and that consequently this court has no jurisdiction.

[1] I find the material facts to be as follows:

The plaintiff is an efficiency engineer. Prior to March 8, 1914, he had been a resident of Boston and a citizen of Massachusetts. He is unmarried, has no family, and lived in lodgings in Boston, where his office was and is.

Some time prior to March 8, 1914, he had done some work at the defendant's manufacturing plant, in the course of which he had received physical injuries, which he contends were caused by the negligence of the defendant, and he had brought an action to recover damages therefor in the Massachusetts court. That action had been discontinued by him prior to March 8, 1914. On that date he sent the property which he had at his lodgings, namely, a trunk and some bags, containing clothes, books, and personal effects, to Providence, R. I., and went there and engaged lodgings, and he gave up his lodgings in Boston. But he retained his office in Boston, and has never made any change in that. He has never had any office in Providence, and no business in Rhode Island since March 8, 1914. He had no family in Providence. The only reason why he removed there was, as he admits, in order to obtain a residence in Rhode Island for the purpose of bringing this action in the federal court. Since his alleged change of residence, he has spent comparatively little time in Providence. Occasionally he has been there for a few days at a time, occasionally he has spent week ends there, and on one occasion he was there for three or four weeks continuously. While the evidence is not entirely clear, I infer that he has spent more nights in Boston since March 8th than in Providence. A considerable part of the time his work has required him to travel, or to be temporarily stationed at various places where he was for the time being engaged in his professional work. When so traveling he customarily registered as of Boston. Under date of April 18, 1914, he wrote to the registrars of voters of Boston, asking to have his name taken off the voting list of Boston, on the ground that he had become a resident of Providence on March 9, 1914; and under the same date he wrote to the registrar of voters of Providence, asking to have his name placed on the voting list of that city. In reply to this last letter he was informed that he must apply in person to the board of canvassers and registration in Providence, and he never did so. All his mail comes to his Boston office, and he pays therefrom the bills for his lodging in Providence. In endeavoring to change his residence, he acted under the advice of counsel, and intended to do whatever was necessary to secure a residence in Rhode Island, in order that he might thereby acquire the right to sue in the federal court. After March 8, 1914, he kept no regular lodging in Boston. When he stayed overnight in Boston, he customarily took a room either at the place where he had formerly lodged or at another lodging house where he was known; but such hiring

was from day to day only. I infer that he will give up his Providence lodging and return to Boston as soon as this litigation is terminated.

If the plaintiff has in fact changed his domicile, his reason for doing so is immaterial. Morris v. Gilmer, 129 U. S. 315, 328, 9 Sup. Ct. 289, 32 L. Ed. 690. The question is whether, upon the facts stated, with such inferences as are properly to be drawn therefrom, a real change of domicile has been established. In Ennis, Adm'r, v. Smith, 14 How. (N. S.) 400, 423, 14 L. Ed. 472, it is said in reference to a change of domicile:

"But there must be, to constitute it, actual residence in the place, with the intention that it is to be a principal and permanent residence. * * * A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it."

In Morris v. Gilmer, supra, it is said:

"There must be an actual, not pretended, change of domicile; in other words, the removal must be 'a real one, animo manendi, and not merely ostensible.'"

The facts in Morris v. Gilmer seem to me to have been stronger in favor of the plaintiff than those here, but it was held that there had been no change of domicile. The present case resembles pretty closely Andrews, Adm'x, v. Andrews, 176 Mass. 92, 57 N. E. 333, where it was held that a domicile had not been acquired in Dakota. See, too, 1 Foster Fed. Pr. (4th Ed.) § 19, p. 5.

[2] The plaintiff has filed three requests for rulings, copies of which are annexed. The first is refused; the third is given. The second request is as follows:

"The burden is on the defendant to convince the court to a legal certainty of its lack of jurisdiction."

The expression "to a legal certainty," in this connection, seems to have originated in Barry v. Edmunds, 116 U. S. 550, 559, 6 Sup. Ct. 501, 29 L. Ed. 729, where it was used with reference to a plea in abatement based upon an allegation that the amount in controversy was in fact less than the jurisdictional amount, although a greater sum was claimed by the plaintiff as damages for an alleged assault upon him by the defendant. The same expression was approved in Deputron v. Young, 134 U. S. 241, 252, 10 Sup. Ct. 539, 33 L. Ed. 923, where it was used with reference to a petition to dismiss for lack of diversity of citizenship, which was not filed until after the case had been tried on its merits and a verdict had been returned against the petitioner. The facts on which these two decisions rest seem to me essentially different from those of the present case. In Barry v. Edmunds the court was called upon by the plea in abatement to speculate as to the utmost verdict which a jury was likely to return for the assault. In Deputron v. Young many months had gone by since the case was at issue, and it had been tried on the merits and decided against the petitioner before the petition to dismiss was filed. Obviously, under such circumstances, every doubt as to the jurisdiction ought to be resolved in favor thereof.

In this case, on the other hand, the plea in abatement was seasonably filed within the time for appearance. At the very beginning of

the litigation the defendant has challenged specially and in an appropriate manner the jurisdiction of the court. Apart from statute, the jurisdictional allegations would have to be proved by the plaintiff to the same extent as any other allegation essential to the plaintiff's case. It is contended, however, that under Judicial Code, § 37, the burden of proof is shifted, and that it devolves upon the party attacking the jurisdiction to establish lack of jurisdiction "to the satisfaction of the court," which, it is argued in Hill v. Walker, 167 Fed. 241, 92 C. C. A. 633, means "to a legal certainty." I do not find it necessary to decide whether the Code puts the burden of proof on the party denying jurisdiction, because, even if the burden of proof is upon the defendant here to establish by a fair preponderance of the evidence that the court has no jurisdiction, I am of opinion—and I find—that it has sustained such burden. I do not think that the defendant, in order to make good its plea, is bound to establish lack of jurisdiction beyond a fair preponderance of the evidence. If, in the request quoted, the words "to a legal certainty" mean proof beyond a fair preponderance of the evidence, the request is refused; if not, it is given.

I find and rule that the plaintiff was not, at the time when this action was brought, a resident of Rhode Island, that he was at that time a resident of Massachusetts, that there is no diversity of citizenship, and that this court is without jurisdiction. The plea in abatement is adjudged good.