Arthur L. LANG, Administrator of the Estate of Richard Klinkhammer, Plaintiff,

v.

The ELM CITY CONSTRUCTION COMPANY, Austin R. LeMoine, a.k.a. Augustin R. LeMoine, Defendants,

v.

SAVIN BROTHERS, INC., Third-Party Defendant.

Civ. No. 9024.

United States District Court
D. Connecticut.

May 14, 1963.

Ira B. Grudberg, of Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., for plaintiff.

John D. Fassett, of Wiggin & Dana, New Haven, Conn., for defendant The Elm City Const. Co.

Richard P. Heffernan, of Heffernan & Heffernan, West Hartford, Conn., for defendant LeMoine.

Francis J. Moran, New Haven, Conn., for third party defendant Savin Brothers, Inc.

TIMBERS, District Judge.

Plaintiff's motion, pursuant to Rule 12(f), Fed.R.Civ.P.,[1] to strike the first defense of defendant Elm City Construction Company, raises questions with respect to the Court's jurisdiction over the subject matter of this wrongful death action in view of the appointment of plaintiff as foreign administrator expressly for the purpose of creating diversity of citizenship.

Plaintiff's motion is granted; partial summary judgment may enter in favor of plaintiff on the first defense of defendant Elm City Construction Company.

## FACTS

The facts necessary to a determination of this motion, as disclosed by the pleadings and other papers submitted on this motion, are not in dispute.

Richard Klinkhammer, age 24, sustained fatal injuries November 30, 1960 when a bulldozer[2] backed over him at the Long Wharf Redevelopment area in New Haven. The bulldozer was owned by defendant Elm City Construction Company which leased it to defendant Savin Brothers, Inc. whose employee, defendant Austin R. LeMoine, was operating it at the time of the accident. All defendants are Connecticut citizens.

Plaintiff Arthur L. Lang, administrator of the estate of Klinkhammer, is a Pennsylvania citizen. The prime motive for substituting[3] plaintiff as administrator of decedent's estate "was to obtain the requisite diversity of citizenship necessary to institute this particular action

---

1. Since matters outside the pleadings have been presented to and not excluded by the Court on this motion, it is treated as a Rule 56 motion for partial summary judgment. Rules 12(b) and 12(c), Fed. R.Civ.P. The parties have so treated the motion; plaintiff and defendant Elm City Construction Company each request that summary judgment be granted in his or its favor.

2. The Court ruled May 21, 1962 that the bulldozer here involved was a "motor vehicle" within the meaning of the Connecticut statute which imposes upon the lessor of a motor vehicle owned by him the same liability as that of the opera-

tor had he owned it. Conn.Gen.Stat. § 14-154 (1958).

3. The original administratrix of decedent's estate, appointed January 6, 1961 by the Probate Court for the District of North Branford, Connecticut, was his mother, Mrs. Edith S. Klinkhammer, with whom decedent lived in North Branford at the time of his death. She was a resident of Connecticut, as were decedent's other intestate heirs. Mrs. Klinkhammer resigned as administratrix October 23, 1961, upon which date plaintiff was appointed successor administrator. The instant action was commenced November 1, 1961.

in this particular forum."[4]  Plaintiff was appointed administrator by the Probate Court for the District of North Branford, Connecticut; he has qualified and is acting as such.

The requisite jurisdictional amount is involved, plaintiff having sued for $200,000.

## QUESTIONS PRESENTED

Two questions are presented by defendant Elm City Construction Company's first defense,[5] the answers to which are believed to be dispositive of the instant motion:

(1) Does 28 U.S.C. § 1359 require dismissal of this action on the ground plaintiff "has been improperly or collusively made or joined to invoke the jurisdiction" of this Court?

(2) Does Conn.Gen.Stat. § 52–21 require dismissal of this action on the ground plaintiff is presumed to reside "in the town where the court of probate which granted administration is held" [here, North Branford], thus

destroying diversity jurisdiction?

The Court holds both questions must be answered in the negative.

### I

### 28 U.S.C. § 1359

██ The citizenship of the fiduciary —whether executor, administrator, trustee or guardian—and not that of the decedent, beneficiary or ward, is looked to in determining diversity jurisdiction. 3 Moore's Federal Practice, ¶ 17.04, p. 1313 (2d ed. 1948); see Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch.) 306, 2 L.Ed. 629 (1808).  The rationale is that the fiduciary is the real party in interest.  Rule 17(a), Fed.R.Civ.P.  This Court has held that an administratrix is the proper party in the federal court to pursue a claim based on the Connecticut wrongful death statute; in denying a motion to dismiss for lack of jurisdiction, Judge Smith said, "The powers and duties of the administratrix under her appointment make her a real party in interest even though the recovery is for the ultimate benefit of others."  O'Don-

---

4. The circumstances under which plaintiff was substituted as administrator of Klinkhammer's estate and the motive for his appointment are stated with candor in plaintiff's brief and are accepted by defendant Elm City Construction Company as a stipulation for purposes of this motion:

"Arthur L. Lang, the personal representative of the estate of Richard Klinkhammer, is and at all times here relevant has been a citizen of the State of Pennsylvania, a resident of Philadelphia.  During the life of the decedent herein, Lang had no personal relationship with either the decedent or those who will now be the ultimate beneficiaries of the money judgment, if there be any, in the instant case—nor is he presently an intimate of the parents of young Klinkhammer.  The intestate heirs of the decedent, upon the advice of counsel, moved to have Mr. Lang substituted as administrator of their son's estate.  The prime motive for this appointment was to obtain the requisite diversity of citizenship necessary to institute this particular action

in this particular forum.  The reason for counsel's advice concerning the appointment of a foreign administrator was its past and present belief that such a move would be in the best interests of the decedent's estate.  Counsel are of that opinion because of the enlightened rules of practice in the Federal Courts, because of the uniform excellence of the judiciary in this district and circuit, and, finally, because the jury selection system used in this court has resulted consistently in the seating of intelligent jury panels."

5. Defendant Elm City Construction Company's first defense reads as follows:

"This Court lacks jurisdiction of this action since the deceased was a citizen of the State of Connecticut, both defendants are citizens of the State of Connecticut, and the plaintiff is a citizen as a result of application of section 52–21 of the General Statutes of Connecticut and also because of the applicability of section 1359 of Title 28 of the U.S. Code."

876

nell v. Hayden Truck Lines, 61 F.Supp. 823 (D.Conn. 1945).[6]

■ So far as this Court can discover, neither the United States Supreme Court nor the Court of Appeals for the Second Circuit has passed on the question whether appointment of a foreign fiduciary expressly for the purpose of creating diversity of citizenship is improper or collusive within the meaning of 28 U.S.C. § 1359.[7]

The Court of Appeals for the Third Circuit, sitting *en banc* in a case on all fours with the instant case, held such appointment of a foreign fiduciary expressly to create diversity was not improper or collusive. Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3 Cir. 1959).[8] There a 12 year old boy was killed in Pennsylvania when a wheel detached from a racing car, went into the stands and struck him. His mother, with whom the boy had lived in Pennsylvania, was appointed his administratrix by the Orphans' Court for Allegheny County. Thereafter she resigned expressly for the purpose of enabling the Orphans' Court to appoint a non-resident administrator who could bring a wrongful death action in the United States District Court for the Western District of Pennsylvania. Such a non-resident administrator from Steubenville, Ohio,

was appointed. Such a wrongful death action was instituted in the federal court in Pittsburgh. Defendants moved to dismiss on the ground diversity of citizenship between the parties was "simulated" and "designed solely and collusively to create jurisdiction." The district court denied the motion and certified the controlling question of law to the Third Circuit pursuant to 28 U.S.C. § 1292(b).

The Third Circuit, noting that "The Supreme Court of the United States has not ruled on this issue,"[9] stated the issue presented for determination as follows (264 F.2d 784, 785):

"Whether the resignation or renunciation of a resident administratrix and the appointment of a non-resident administrator, d. b. n., for the express purpose of creating diversity of citizenship between the parties, was collusive and, therefore, in violation of Section 1359, Title 28 U.S.C."

In answering this question in the negative, the court reviewed its own prior decisions dealing with the question;[10] found the facts in the case at bar to be within the ambit of the decision of the United States Supreme Court in the Black & White Taxicab case[11] rather than the decisions of the Supreme Court in the

6. Compare Harris v. Barone, 147 Conn. 233, 234, 158 A.2d 855, 856, (1960), where the Supreme Court of Errors said "* * * While the right to bring suit for wrongful death is in the administrator, he does not act in his true capacity as administrator for the benefit of the estate but as agent or trustee for those beneficially interested."
This Court does not read Barone as indicating an administrator is not the real party in interest, and certainly not from the standpoint of determining diversity jurisdiction; nor does this Court agree with the observation of defendant's counsel that "decisions by the Supreme Court of Errors [referring to Barone] respecting the status of an administrator in bringing a wrongful death action strongly suggest that O'Donnell was incorrectly decided."

7. 28 U.S.C. § 1359:
"Parties collusively joined or made. A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

8. The Third Circuit, *en banc*, on the same day as it decided Corabi, held the same way on the same issue in Jamison v. Kammerer, 264 F.2d 789 (3 Cir. 1959).

9. Corabi v. Auto Racing, Inc., 264 F.2d 784, 785 n. 1 (3 Cir. 1959).

10. Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010, 1011–1013 (3 Cir. 1950); Fallat v. Gourau, 220 F.2d 325, 326 (3 Cir. 1955).

11. Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928).

Lehigh Mining case [12] and the Miller & Lux case; [13] discussed the terms "improperly" and "collusively" as used in the statute; [14] noted the cases supporting the court's view and those supporting a contrary view; [15] and concluded that "the arrangement here made is not within the reach of Section 1359. If what we deem to be the law is to be changed we think that it would be improper for that change to emanate from this court." [16]

■ While the decision of the Third Circuit in Corabi is not controlling on this Court, it is persuasive and will be followed, absent a decision on the question by the Supreme Court or the Second Circuit.[17]

12. Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895).

13. Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189 (1908).

14. Corabi v. Auto Racing, Inc., supra note 9, at 788.

15. Id. at 788 n. 10.

16. Id. at 788.
See bill introduced January 28, 1963 by Congressman Celler "to withdraw from the district court jurisdiction of suits brought by fiduciaries who have been appointed for the purpose of creating diversity of citizenship between the parties." H.R. 2832, 88th Cong., 1st Sess. (1963), 109 Cong.Rec. 1108 (1963).

17. The Supreme Court in Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), while not construing 28 U.S.C. § 1359, did sanction a widow's substitution of a resident administrator to *destroy* diversity jurisdiction after she had twice brought suit in the state courts only to have such suits removed to the federal court each time; in holding that the motive or purpose of obtaining such appointment is immaterial on the question of identity or diversity of citizenship, the Supreme Court said (284 U.S. 183, 189, 52 S.Ct. 84, 87, 76 L.Ed. 233):
"But it is clear that the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it."
The federal courts for many years have sanctioned a change of citizenship to *create* diversity jurisdiction, holding that they have jurisdiction even though plaintiff changed his domiciliary state solely to create diversity. Robertson v. Carson, 86 U.S. (19 Wall.) 94, 106, 22 L.Ed. 178 (1873); Shoaf v. Fitzpatrick, 104 F.2d 290 (6 Cir. 1939); Dossett v. Davis, 29 F.Supp. 483 (E.D.Tenn.1939); Anderson v. Splint Coal Corp., 20 F.Supp. 233 (E.D.Ky.1937); King v. Kansas City Police Relief Assn., 60 F.2d 547 (W.D. Mo.1932). Only where the party changing his residence never had any intention of remaining in his new home was access to the federal courts denied—and that on the ground that he never really had changed his citizenship. Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889); compare Simpson v. Phillipsdale Paper Mill Co., 223 F. 661 (D.Mass. 1915).
The Eighth Circuit has taken the same position as that of the Third Circuit in Corabi. County of Todd v. Loegering, 297 F.2d 470 (8 Cir. 1961), affirming 185 F.Supp. 134 (D.Minn.1960); McCoy v. Blakely, 217 F.2d 227 (8 Cir. 1954).
In the Second Circuit, the only reported decision touching upon the Corabi question appears to be Meehan v. Central Railroad Co. of New Jersey, 181 F.Supp. 594 (S.D.N.Y.1960). There the facts did not establish that the foreign administrator was appointed solely to create diversity jurisdiction and the court did not reach the question whether joinder was collusive or improper; but Judge Levet, in resolving the controversy as to whether plaintiff's interest was a "real interest" or a "nominal interest", did follow the rationale of Corabi.
See also McWilliams v. Dawson, 48 F. Supp. 538 (N.D.Tex.1943); Goff's Adm. v. Norfolk & W. R. Co., 36 F. 299 (W.D. Va.1888).
Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), although involving a consideration of 28 U.S.C. § 1359, is not here in point. The issue there concerned alignment of parties in a stockholder's derivative action where the corporation was antagonistic to enforcement of the claim. The statute was cited and implicitly no collusion was

This Court accordingly holds that, while plaintiff was appointed foreign administrator expressly for the purpose of creating diversity of citizenship, he was not "improperly or collusively joined" to invoke the jurisdiction of this Court within the meaning of 28 U.S.C. § 1359.

## II

### Conn.Gen.Stat. § 52–21

■ Defendant Elm City Construction Company's first defense presents an alternative line of defense.

It argues, not without ingenuity, that Section 52–21 [18] requires that a non-resident administrator be considered, *in determining federal jurisdiction*, as a resident of the town "where the court of probate which granted administration is held."

The short answer to defendant's contention, in the opinion of this Court, is that (i) the statute is not to be read as stripping the federal court of jurisdiction of actions brought by foreign fiduciaries, and (ii) if it were to be so read, this Court would be constrained to strike it down in view of the supremacy clause of the Constitution of the United States.[19]

Section 52–21, on its face and in the context in which it appears in the Connecticut General Statutes, deals with the Connecticut state court system.[20] It is

part of Chapter 895, entitled "Jurisdiction and Venue" of "Civil Actions".[21] Surrounding sections emphasize the local character of the venue and jurisdiction provisions of the chapter, e. g. "Land lying in several counties or towns" (Section 52–17); "Return of action brought by foreign corporation" (Section 52–20); "Civil actions of party resident in Shelton brought to Bridgeport or Ansonia" (Section 52–25); "Transfers between Bridgeport, New Haven and Waterbury and Ansonia" (Section 52–26).

Defendant argues that, while Rule 17 (a) provides that "an * * * administrator * * * may sue in his own name without joining with him the party for whose benefit the action is brought," nevertheless Rule 17(b) directs that the capacity of a person acting in a representative capacity to sue "shall be determined by the law of the state in which the district court is held." It follows, so defendant argues, that this Court must look to Connecticut law to determine the capacity of a fiduciary to maintain an action in the federal court. Up to this point, there can be no quarrel with defendant's position.

But then defendant cites Noel v. St Johnsbury Trucking Co., 147 F.Supp. 432 (D.Conn.1956), in support of its further argument that this Court, in looking to Connecticut law to determine the capacity of a fiduciary to maintain an action

---

found to exist. The Supreme Court did not announce any guidelines with respect to improper or collusive joinder which would aid in resolving the question presented in the instant case.

18. Conn.Gen.Stat. § 52–21 (1958):
   "*Action by nonresident executor or trustee.* In any action brought by a nonresident executor, trustee under a will or administrator, the same court shall have jurisdiction as would have if the plaintiff resided in the town where the court of probate which granted administration is held."

19. U.S.Const. art. VI, § 2.

20. Defendant states in its brief, "Unquestionably the drafters of the section had

in mind state courts in drafting the provision." This Court agrees.

21. Chapter 895 of the 1958 Revision of the General Statutes is derived from the original codification, Section 968 of the 1888 Revision of the General Statutes, entitled "Venue, or Place of Trial of Civil Actions Within the Jurisdiction of the Superior Court, Courts of Common Pleas, and District Courts." The latter referred to "District Courts" which were part of the state court system. Not until the Judicial Code of 1911 abolished the federal "Circuit Court" and transferred jurisdiction to the federal "District Court" did the "District Court" become the baseline trial court in the federal system. See 1 Moore's Federal Practice, ¶ 0.2 [1], p. 12 (2d ed. 1961).

in the federal court, must read Section 52–21 as excluding foreign fiduciaries from suing in the federal court because "it has been held [citing Noel] that a foreign administrator may not maintain an action in that Court since he could not maintain an action in the courts of Connecticut." This argument the Court cannot accept.

In Noel, this Court dismissed the action on the ground plaintiff foreign administrator, although appointed by a New Hampshire court, brought suit in the federal court in Connecticut under the Connecticut Wrongful Death Act without first obtaining appointment as administrator by a Connecticut court. Aside from the fact that plaintiff foreign administrator in the instant case has obtained appointment as administrator by a Connecticut court, the basis of the dismissal in Noel was the *absence of a remedy in the state courts*. This Court, following the command of Erie [22] to reach the same result as the state court "across the square", simply followed state law which, for valid policy reasons, denies access to courts of this state to persons who fail to qualify to bring suit under the Connecticut Wrongful Death Act.

This is a far cry from reading into Section 52–21 a limitation upon federal diversity jurisdiction—a limitation which would strip the federal court of jurisdiction of all actions brought by foreign fiduciaries and would restrict to the state courts all actions brought on behalf of a decedent's estate. A state legislature may not thus limit federal diversity jurisdiction.

In Railway Co. v. Whitton's Admr., 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871), the Supreme Court, in holding invalid a Wisconsin statute limiting all death actions to the state courts, said (80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571):

"In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jursidiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court."

This rule has been uniformly followed. The Fourth Circuit regarded it as "axiomatic" in Markham v. City of Newport News, 292 F.2d 711, 713 (4 Cir. 1961), in holding that:

"[W]henever there was a substantive right enforceable in a judicial proceeding in any court of the state, it was enforceable in the courts of the United States if the controversy was between citizens of different states and involved the minimum amount of money."

Defendant argues that since Connecticut can deny to a foreign fiduciary any status to sue, it can deny to him only the status necessary to bring suit in the federal court. Rejecting an analogous argument, the Fourth Circuit in the Markham case, said (292 F.2d 711, 715):

"A state may exclude a foreign corporation and, generally, it may impose terms upon which it will permit a foreign corporation to do intrastate business within its borders. However, it may not condition the right to do business upon surrender of the foreign corporation's right to invoke the federal diversity jurisdiction."

This Court accordingly holds that from the fact plaintiff is a non-resident administrator it does not follow that he is presumed to reside in the town where the court of probate which granted administration is held, thus destroying diversity jurisdiction. In short, this Court holds that Conn.Gen.Stat. § 52–21 has no bearing whatever on determination of this Court's jurisdiction.

\* \* \* \*

Since this case presents controlling questions of law as to which there is substantial ground for difference of opin-

---

22. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ion and an immediate appeal from this Court's order may materially advance the ultimate termination of this litigation,[23] a certificate pursuant to 28 U.S.C. § 1292(b) has been issued.

23. Corabi v. Auto Racing, Inc., supra note 9, at 785.